Roy L. BALLARD, and Becky L. Ballard, Petitioners,

v.

WYOMING PARI–MUTUEL COMMISSION of the STATE of WYOMING and its Commissioners, Agents and Servants, and Wyoming Downs and its Agents and Servants, Respondents.

No. 87–7.

Supreme Court of Wyoming.

Feb. 1, 1988.

Franklin D. Bayless of Bayless & Blythe, Cheyenne, for petitioners.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Terry L. Armitage, Asst. Atty. Gen., for respondents.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This hegira through administrative-litigative processes started with suspension of a racehorse trainer who, after winning a race, found that his horse tested positive for an unpermitted drug. Proceedings followed through two restraining orders from two separate courts, finally to an adverse ruling in an administrative hearing, which adverse ruling is now on appeal here through certification from the district court, pursuant to Rule 12.09, W.R.A.P. The penalty entered initially was a $200 fine and one-and-a-half months suspension, and was augmented through the course of appellate and administrative processes to the present two-year suspension and $1,500 fine.

Out of this convoluted and complex proceeding we derive a conclusion that any further administrative suspension beyond time served should be disallowed, and that the pending proceeding should be dismissed as moot.

On July 19, 1985, Ators Greeter, a racehorse owned by Becky L. Ballard and trained by her husband, Roy L. Ballard (Ballard), petitioners herein, won the fifth race at the Wyoming Downs racetrack near Evanston. A urine sample taken pursuant to Pari–Mutuel Commission rules revealed the presence in the horse of the steroid prednisolone. On July 27, 1985, the racetrack stewards informed Ballard about the positive test result, and formally found him in violation of Commission rules Ch. 1,

§§ 10(p), 11(a), and 11(b),[1] fined him $200, and suspended his trainer's license through September 12, 1985 by written notice:

"Violation of the 'trainer insurer' Rule, 10P. Violation of Rule 11A, allowing the horse 'Ators Greeter' to participate in the 5th race on 7.19.85 with the drug prednisolone in its body. Violation of Rule 11B, negligence in the handling and care of 'Ators Greeter.' Purse is to be redistributed. Said trainer is denied any and all privileges of the grounds and the case is referred to the Racing Commission for further action."

Four days later, Ballard sued in the Third Judicial District, Uinta County, and obtained a temporary restraining order followed by a preliminary injunction which apparently never has been lifted. That preliminary injunction provided in part:

"On August 2, 1985, the Stewards executed and filed herein their Waiver of Service of Process and Consent to Entry of Preliminary Injunction, waiving the failure of timely service of the Temporary Restraining Order upon them and consenting to the entry of a preliminary injunction against them until plaintiff obtains a hearing before the Commission.

"And it appearing to the Court after due deliberation that the action of the Stewards in ruling plaintiff off the Wyoming Downs race track and suspending him from further acting as a trainer thereat, without first affording him a hearing before the Commission, is in violation of Section 16–3–113(c), W.S.1977, as amended, and would deprive plaintiff of his livelihood and cause him irreparable injury, loss and damage for which he has no adequate and speedy remedy at law.

"IT IS THEREFORE ORDERED, that the above named Stewards and Commission, their agents, servants, employees and all persons in active concert and participation with them, be and they are hereby restrained and enjoined, until plaintiff receives a hearing before the Commission on the charges leading to his suspension by the Stewards, from enforcing said suspension or in any manner preventing or interfering with plaintiff acting as a licensed trainer at the Wyoming Downs race track * * *."[2]

By memo dated August 7, 1985, as found in the court file, the executive secretary of the Pari–Mutuel Commission wrote to the Attorney General's office, stating in part:

"I believe we will need some help in this matter. The Commission will be meeting in Evanston on August 16 at 1:30 p.m., following the Management Audit Committee meeting (see notice attached). Bob Laramore is most anxious that the

---

1. "*A trainer shall be the absolute insurer of and responsible for the condition of the horses* entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of blood or urine sample, or other tests, prove positive, showing a presence of any narcotic, stimulant, depressant, foreign substance or drug of any kind or description, the trainer of the horse may, in the discretion of the Commission, have and receive any or all of the following penalties: be fined, suspended, his license revoked or ruled off and in addition the owner of the horse and any other person or persons shown to have had the care or attendance of the horse, may in the discretion of the Commission, have any or all of the following penalties inflicted: be fined, suspended, his license revoked, or ruled off." (Emphasis added.) Chapter 1, § 10(p), Wyoming Rules of Racing and Pari–Mutuel Events (sometimes referred to in the record as Rule 10P).

   See, however:

   "No horse participating in a race shall carry in its body any foreign substance except as provided in these procedures." Chapter 1, § 11(a), Wyoming Rules of Racing and Pari–Mutuel Events (sometimes referred to in the record as Rule 11A).

   "A finding by the chemist that a foreign substance is present in the test sample *shall be prima facie evidence that such foreign substance was administered and carried in the body of the horse* while participating in a race. Such a finding shall also be taken as *prima facie evidence that the trainer and his agents* responsible for the care or custody of the horse *have been negligent* in the handling or care of the horse." (Emphasis added.) Chapter 1, § 11(b), Wyoming Rules of Racing and Pari–Mutuel Events (sometimes referred to in the record as Rule 11B).

2. In the absence of anything else to be discerned in this file, that injunctive order is probably still in effect, since the Administrative Procedures Act hearing was not held until after another injunctive order was issued by a different district court.

Commission have an attorney present who is well versed in Administrative Procedure so that we don't violate anyone's rights and have this case thrown out. "There is one major discrepancy in the complaint in that Ballard was afforded a hearing before the stewards—he didn't realize that his discussion of the matter with them should be considered a hearing. Also, he implied to his attorney that the Commission would have a hearing on his case August 16, when in fact the matter has only been referred to the Commission for their consideration and they do plan to meet on the 16th. However, under the circumstances it would appear advisable that the Commission hold a hearing on that date so that this matter may be resolved."

On August 16, as noted by comment in the brief, in response to the injunction and its hearing requirement, the Commission met in Evanston without notice to Ballard, and, without hearing and in his absence,[3] considered the stewards' action as resolved by increasing the penalty to a fine of $1,500 and the license suspension to one year, as stated in the minutes:

"Roy Ballard—Ruling E–12 of July 27, positive test on 'Ators Greeter' from Race 5 on July 19, for prednisolone, trainer fined $200 and suspended through 9–12–85. Upon a review of the case and motion by Baker seconded by Oliver, fine was increased to $1,500 and trainer suspended for one year to August 16, 1986."

In a letter to the Commission dated the prior day, August 15, with an indeterminate date of receipt since not date-stamped,[4] Ballard had asked for a stay of suspension and stated that he would accept the action of the stewards. Without re-sponding to that letter, the executive secretary of the Commission, following the increase in penalty, wrote Ballard by certified mail on August 23:

"As you should know, you have the opportunity to present your case and appeal this decision at a hearing before the Commission. Should you wish to be heard by the Commission, either in person, by counsel, or both, it will be necessary for you to notify the Commission in writing within five (5) days of receipt of this letter. You may direct your request for hearing to the above letterhead address. The Commission is scheduled to meet on September 28, Saturday, in the Carbon County Library in Rawlins, beginning at 9 a.m. and should you request a hearing you will be heard that morning."

The record is somewhat fuzzy as to what occurred next, but in some fashion Ballard requested an opportunity to be present at the September 28 meeting where, without counsel or evidence being presented, as he asked for a reduction of suspension, the following action was taken by the Commission:

"Appeal by Roy Ballard of Commission's fine and suspension set at Aug. 16 meeting ($1500 and one year) for positive test results on 71985, 5th race, Ators Greeter: Ballard appeared to request reduction of suspension. After review and discussion, Baker moved, Oliver seconded that ruling stand as is. The motion passed unanimously."

Prior thereto, on September 10, 1985, another notice by order to show cause had been issued to Ballard by the Commission, scheduling a hearing for November 1, 1985.[5]

---

**3.** Legal counsel from the Attorney General's office became involved apparently with the preliminary-injunction process in Uinta County on August 1 and 2, 1985, and continued to be involved thereafter in representing the Commission. However, counsel handling the present appeal is not the initial representative.

**4.** If the Commission has not already done so, it is suggested that it obtain and use a date receipt or file stamp, or both, as neither one is found to have been used for instruments in this record.

**5.** "NOTICE AND ORDER TO SHOW CAUSE

"YOU ARE HEREBY NOTIFIED by the Wyoming Pari-Mutuel Commission, in accordance with § 11–25–104(c) (W.S.1978) and pursuant to the Wyoming Administrative Procedure Act, §§ 16–3–101 et seq. (W.S.1977), by and through this Notice and Order to Show Cause that certain infractions have been charged against you by George Grierson, Carlton 'Tinker' Lane and Herman 'Slim' Summers, Stewards of the Wyoming Pari-Mutuel Com-

Again the record is something less than a model of clarity, but the Ballard suspension again came to be considered by the Commission at a meeting held in Cheyenne on November 1, 1985, apparently in response to the order to show cause. Obviously no hearing was held, but exactly what occurred is not indicated, except for the action taken according to a portion of the minutes of that session:

"Ballard's request for 're-hearing' was discussed. Commission denied same, seeing little reason to rehear the same request. Ballard's course of action would have to be through the court system."

Apparently the American Quarter Horse Association computerized reciprocal suspension system finally caught up, and after further suspension in adjoining states, Roy Ballard and Becky Ballard, who was likewise under suspension as his wife, employed counsel, which resulted first in a petition for modification dated April 1, 1986 but denied April 5, 1986,[6] to be followed by a June 13, 1986 notice and order to show cause filed with the Pari–Mutuel Commission in behalf of Ballard challenging his continued suspension. At about the same time, a verified petition was filed in the First Judicial District, Laramie County, against the Commission, its commissioners and agents, and Wyoming Downs in Evanston, in behalf of both Roy Ballard and Becky Ballard. Although 42 U.S.C. § 1983 was referenced in the pleadings, the basic remedy requested was for issuance of a temporary restraining order and preliminary injunction enjoining and restraining defendants from the continued suspension of both Roy Ballard and Becky Ballard.

The temporary restraining order was granted on April 15, 1986, and following hearing and extensive briefing, including comment by plaintiffs that the Commission had not complied with the prior Uinta County restraining order and injunction, a new preliminary injunction was issued April 30, 1986, finding:

"2. That Plaintiff, Roy L. Ballard, has not been granted a hearing as required by the Administrative Procedures Act and in accordance with the Preliminary Injunction issued by the State of Wyoming, County of Uinta, in Ballard v. Wyoming Pari–Mutuel Commission, Civil No. 85–264, Third Judicial District.

"3. That pending the outcome of said hearing, Plaintiffs should not be deprived of their license privileges as horse train-

mission. The Commission having considered said infractions finds that the alleged acts or omissions constitute a breach of the Wyoming Rules of Racing and Pari–Mutuel Events.

"YOU ARE FURTHER NOTIFIED that pursuant to Chapter III of the Wyoming Rules of Racing and Pari–Mutuel Events a hearing will be held on November 1st, 1985 in room 302 of the State Capitol, Cheyenne, Wyoming at 8:00 o'clock A.M. of said date subject, however, to objections thereto by you.

"That the alleged acts and conduct which warrant the intended action by the Commission to suspend your license and impose a fine are acts or omissions which constitute violations of the Wyoming Rules of Racing and Pari–Mutuel Events in the following respects:

"1. That Roy Ballard, licensed as a trainer by the Commission, allowed the horse, Ators Greeter, to participate in the fifth race on July 19th, 1985 at Wyoming Downs with the drug prednisolone in its body. This is a violation of Chapter I, Sections 11(a) and (b) of the rules in that Roy Ballard, as trainer of Ators Greeter, is negligent in the handling and care of the horse.

"2. That trainer Roy Ballard is the absolute insurer of and is responsible for the condition of the above horse pursuant to Chapter I, Section 10(p) of the rules, and thus is subject to any of the penalties provided for in that section.

"FAILURE TO RESPOND at the above mentioned hearing or make other answer will result in the allegations contained herein to be taken as true and your license as a trainer may be suspended or revoked, and a fine may be imposed by the Wyoming Pari–Mutuel Commission and other sanctions may be imposed as authorized by statute or the rules of said Wyoming Pari–Mutuel Commission."

6. Minutes of the Commission meeting on April 5, 1986, again reflect:

"Prior to a lunch break the public meeting was adjourned to allow the Commissioners an opportunity discuss, via phone, Roy Ballard's petition for a reduction of suspension and/or fine with his attorney, Frank Bayless of Cheyenne. No reductions were approved via the phone conversation with Mr. Bayless, whose comments were heard by all Commissioners present at the meeting and George Grierson and Pat Krueger via a speaker phone."

ers and owners in the State of Wyoming and that the Pari–Mutuel suspension order should be removed from the State records pending final hearing.

"4. That the counsel for Plaintiffs and the Defendants, in representing their parties, have agreed that the suspension of Roy L. Ballard and threatened suspension of Becky L. Ballard be restrained and enjoined pending final hearing and that licenses of Plaintiffs will be renewed pending outcome of the hearing,"

and determining:

"That the Wyoming Pari–Mutuel Commission shall, within sixty days or at such other times as the parties may mutually agree, grant to Roy L. Ballard a hearing in accordance with Sec. 11–25–101 et seq. (W.S.1978) and pursuant to the Wyoming Administrative Procedures Act, Sec. 16–3–101 et seq. and Sec. 16–3–113(a) providing for the grant, denial, suspension, or renewal of a license and Chapter III of the Pari–Mutuel Commission Rules and Regulations; that said hearing shall be conducted by a Hearing Examiner designated by the State of Wyoming in accordance with the Administrative Procedures Act; that discovery times pursuant to the applicable rules shall be accelerated to not extend beyond fifteen days; that this restraining order shall continue in effect as provided in Sec. 16–3–113(b) until the licensing suspension order has been finally determined by the agency and if the suspension is sustained until the last day for seeking review of the agency order unless otherwise ordered by the reviewing Court.

"4. That the Wyoming Pari–Mutuel Commission be and they are hereby restrained and enjoined from suspending Becky L. Ballard based upon the suspension of Roy L. Ballard or in any manner suspending her license as an owner or trainer or in refusing to re-license Becky L. Ballard based upon the suspension of the Plaintiff, Roy L. Ballard, and that both said Roy L. Ballard and Becky L. Ballard shall be re-licensed pending final disposition of the above-entitled matter

in accordance with the Administrative Procedures Act."

The administrative hearing required by the injunctive order was held on June 20, 1986. On voir dire, the members of the Commission attested to their willingness to be fair, and then by decision further increased the suspension to two years. Of immediate interest in the Findings of Fact, Conclusions of Law, and Order, entered August 7, 1986, from which order appeal was retaken to the district court and by the district court certified directly without decision to this court, are the following paragraphs:

"4. The Commission is authorized by *W.S. 11–25–104(e)* to delegate the enforcement of its rules and regulations to three stewards of a pari-mutuel event.

"5. * * * As of March 20, 1986, authority to refer for consideration of further penalty is granted at *W.S. 11–25–104(e)(v)*.

"6. The Commission, at *W.S. 11–25–104(g)* may affirm, increase, reverse, or decrease the stewards penalties. The maximum fine the Commission may impose is $10,000 and suspensions may be imposed for whatever period of time the Commission determines a violation may deserve.

"7. Fines and suspensions imposed by the stewards may be appealed in writing to the Commission as authorized at *W.S. 11–25–104(g)*. An appeal to the Commission must be filed within five days of the date of notice of said penalty, signed by the person making the appeal, and setting forth his reason for believing he is entitled to a hearing; he may be heard in person, by counsel or in writing (Rules, Chapter I, Sec. 4(a)(i–iii)." (Emphasis indicates statutory provisions enacted in 1986.)

The statute in effect when the race was run in 1985, provided:

"The commission shall authorize by permits and supervise the conduct of all events provided for and regulated by this act, and shall make reasonable rules and regulations for the control, supervision and direction of applicants and permit-

tees, including regulations providing for the supervising, disciplining, suspending, fining and barring from racing of all persons required to be licensed by this act, and for the holding, conducting and operating of all races, race meets and racetracks conducted pursuant to this act. The commission shall announce the place, time and duration of race meets for which license or permit fees shall be exacted." Section 11–25–104(c), W.S. 1977.

The rule in effect in accord with that earlier statute was Ch. 1, § 3(1), Wyoming Rules of Racing and Pari–Mutuel Events:

"The Commission may rescind or modify any penalty or decision on infraction of the Rules imposed or made by the racing officials."

Obviously, someone came to recognize statutory insufficiency and rule limitations, since the legislature enacted Ch. 117, S.L. of Wyoming 1986, effective March 20, 1986, where the particular sections of the statute were newly enacted upon which the Commission relied in its decision in August, 1986, including, specifically, subsections (e) and (j), the latter subsection providing, for the first time:

"(j) Any fine or license suspension imposed by a steward or fine imposed by a starter may be appealed in writing to the commission within five (5) days after its imposition. The commission may affirm or reverse the decision of a steward or starter or may increase or decrease any fine or suspension. A fine imposed by the commission shall not exceed ten thousand dollars ($10,000.00). Suspensions of

a license may be for any period of time, but shall be commensurate with the seriousness of the offense." Section 11–25–104(j), W.S.1977, 1987 Cum.Supp.[7]

The administrative hearing had reflected that Ballard had been suspended for something between five and eight months, occurring between the times of effectuation of the temporary restraining orders and interim injunctions by the district courts. Consequently, we are called to wonder whether Ballard has served all of the time for which he could legally be assessed so that any further consideration of the case as it is presently structured is moot. This decision requires interpretation of subsections (g) and (l) of § 3 of the Commission rules, quoted supra, and the effect of the words "rescind or modify." The definition of "modify" in Webster's Third New International Dictionary, Unabridged (1971) is, "to make more temperate and less extreme: lessen the severity of." By this analysis we conclude that the Commission in 1985 had no authority under its own rules to *increase* the suspension from what had been awarded by the stewards, at least without specific recommendations to them as only to be confirmed by the Commission, which did not occur.

Consequently, this court is faced with the apparent posture of the State of Wyoming that the 1986 statute authenticated the 1985 award, or for that matter that it authorized the additional year's suspension which was given as a result of the 1986 hearing. Additionally, we are afforded the opportunity to consider the variously stated arguments presented by petitioners.[8]

---

7. This case does not come to this court in this appeal with discussion in brief by either litigant concerning how the Commission could apply the 1986 statutory penalties and procedure to the 1985 occurrence.

8. "Argument I
"THE WYOMING PARI–MUTUEL COMMISSION VIOLATED ROY BALLARD'S DUE PROCESS RIGHT TO A FAIR HEARING GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIX OF THE WYOMING CONSTITUTION.
"A. The Commission Violated Section 16–3–112(a), W.S.1977, Providing that Hearings Un-

der the Wyoming APA Shall be Conducted in an Impartial Manner.
"B. The Commission Violated Section 16–3–107(k), W.S.1977, Providing that Hearings Under the Wyoming APA Shall Proceed with Reasonable Dispatch to Conclude any Matter Presented to it Except that Due Regard Shall be had for the Convenience and Necessity of the Parties or their Representatives.
"C. Because the Commission Failed, Prior to Instituting Proceedings, to Give Roy Ballard Notice by Mail and an Opportunity to Show Compliance With All Lawful Requirements for the Retention of His License, No Suspension of His License is Lawful.

■ Implicit in several of the listed appeal issues and actually the substantive issue argued by the parties on appeal in this extensively briefed case is whether a rule for absolute liability without fault or defense can be created by the agency.[9] We decline all of those invitations for appellate discussion, and hold that the suspension limitations were constrained by the rules in effect at the date of the incident,

"D. The Commission Violated Roy Ballard's Federal and Wyoming Constitutional Right to Due Process Codified in the Wyoming APA, Section 16–3–107, W.S.1977.

"Argument II

"THE COMMISSION'S ORDER AGAINST A LICENSED TRAINER, ISSUED CONTRARY TO THE EVIDENTIARY REQUIREMENTS OF THE WYOMING APA, SECTIONS 16–3–114(c)(ii)(E) AND 16–3–108(a), WAS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION.

"A. No Substantial Evidence that, While Participating in the Race at Wyoming Downs on July 19, 1985, Ators Greeter Carried in its Body an Unauthorized Substance.

"B. The Commission Abused its Discretion When, Contrary to the Legislative Intent of Section 11–25–108, W.S.1977, as amended, it Fined Roy Ballard and Suspended His Trainer's License Without Giving Weight to the Necessary Evidence of Prednisolone's Use, Effect, or Status as a Stimulant or Retardant.

"Argument III

"BY ORDERING EXCESSIVE AND UNFAIR PENALTIES AGAINST ROY BALLARD, THE COMMISSION ACTED ARBITRARILY, CAPRICIOUSLY AND ABUSED ITS DISCRETION.

"A. Finding of Fact Number 12 and Conclusion of Law Number 6(b), and the Sanctions Based Thereon are Violations of the Wyoming APA, the Federal and Wyoming Constitutions and are Invalid.

"B. In Light of the Testimony and Evidence About Prednisolone, the Commission Abused its Discretion by Imposing Against Roy Ballard an Unfair and Overly Harsh Sanction.

"C. Commission Acted Arbitrarily and Capriciously by Imposing a Fine and Suspension in Disregard of Facts and Circumstances.

"D. The Commission Unlawfully Exceeded its Authority by Suspending Roy Ballard's License Beyond the Expiration Date.

"E. No Further Sanctions Can Fairly or Equitably be Imposed Upon Roy Ballard.

"Argument

"THE COMMISSION VIOLATED BECKY BALLARD'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIX OF THE WYOMING CONSTITUTION."

and that the Commission then had no power with reference to the stewards' action except to rescind or modify. Petitioner's suspension expired after the original term of one and one-half months.[10] We further hold that the ex post facto enactment of an authenticating statute cannot be utilized to legitimize action taken which was not authorized at the time the proscribed activity occurred.[11]

9. Commission rule-drafting attention is directed, if present rules remain unchanged, to the absolute-insurer provision of Rule 10(p) and the prima-facie evidence-of-negligence criteria found in Rules 11(a) and (b). We are not certain whether an absolute liability rule exists if all provisions are to be read together.

Absolute-insurer cases cited by the parties include *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Solimena v. State*, Fla. App., 402 So.2d 1240 (1981), review denied 412 So.2d 470 (1982); *Division of Pari–Mutuel Wagering v. Caple*, Fla., 362 So.2d 1350 (1978); *Sanderson v. New Mexico Racing Commission*, 80 N.M. 200, 453 P.2d 370 (1969); *Johnson v. Commonwealth of Pennsylvania*, 5 Pa.Commw. 453, 290 A.2d 277 (1972). We would add *Barkley v. Louisiana State Racing Comm.*, La.App., 506 So.2d 580 (1987), where the absolute-insurer rule was in issue and appellate reversal occurred in finding a due-process violation by the administrative agency.

10. We have additional question as to the status of the record in this case. This includes doubts, although advised at oral argument that the Commission is no longer attempting to suspend Becky L. Ballard, or that anyone considers the action to be pending against Wyoming Downs, whether the appeal from an administrative decision should properly have been filed in the civil action proceeding, or, for that matter, if a final order is presented by this appeal as occurring in First Judicial District Docket 110, No. 265, of an injunctive action by appeal taken from an order of an administrative agency. In dismissing the proceeding as moot, we will not pursue these interesting subjects.

11. In Commission and court actions this record demonstrates that on July 27, 1985, racetrack steward action occurred by assessment of a one-and-one-half months suspension and $200 fine; August 2, preliminary injunction entered until a hearing was held; August 16, without notice or hearing a meeting was held when penalties were increased to $1,500 and one-year suspension; September 28, appeal denied without evidentiary hearing; November 1, pursuant to order to show cause and notice rehearing denied without evidentiary hearing; April 1, 1986, petition to modify denied April 6 without evidentiary hearing; April 30, another preliminary injunction

Even though resulting from the action of an administrative agency, the application of an increased fine and assessment of the penalty of an extended license suspension, authorized by statute enacted after the event occurred, offends Art. I, § 10 of the United States Constitution and Art. 1, § 35 of the Wyoming Constitution, as ex post facto. *In re Jones*, Wyo., 500 P.2d 690 (1972). 1 Cooley, Constitutional Limitations, p. 545 (8th ed.) recognizes that an express criminal designation is not required to invoke ex post facto limitations that apply to pecuniary penalty or action that deprive a party of any valuable right such as to follow a lawful calling by adding to the punishment and increasing the malignity of the forbidden act. The punitive results of penalty assessment are criminal in nature, and are to be differentiated from the civil forfeiture cases which are much litigated in the federal courts. *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532 (5th Cir.1987).

Additionally, without invoking the constitutional prohibition, the attempted imposition of the augmented penalties by retroactive application of the 1986 statute offends interpretive statute § 8–1–107, W.S.1977:

"If a statute is repealed or amended, the repeal or amendment does not affect pending actions, prosecutions or proceedings, civil or criminal. If the repeal or amendment relates to the remedy, it does not affect pending actions, prosecutions or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of action, prosecutions or proceedings existing at the time of the amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

See *Wyoming Refining Co. v. Bottjen*, Wyo., 695 P.2d 647 (1985); *Matter of Estate of Boyd*, Wyo., 606 P.2d 1243 (1980).

The administrative appeal is reversed and remanded for dismissal of any further suspension.[12]

was issued by a different court and then finally on June 20, 1986 the hearing was held and the penalty additionally increased by another year's suspension. Justification for any increased penalty for the 1985 incident as contained in the 1986 Commission decision could come only from the law enacted in 1986.

**12.** Discreetly stated, as both officers of the court and officials of state government, more attention should have been paid to basic and well-established principles of administrative law by persons responsible for legal advice to the governmental agency and particularly so since the preliminary injunction first issued on August 2, 1985 referenced the stipulation for entry and then ordered:

"* * * that the above-named Stewards and Commission, their agents, servants, employees and all persons in active concert and participation with them be and they are hereby restrained and enjoined, until plaintiff receives a hearing before the Commission on the charges leading to his suspension by the Stewards * * *."

An unnoticed agency session to increase the penalties from $200 and one and one-half months to $1,500 and one year hardly seems an answer to the mandatory criteria of the injunctive action as well as the nonhearing proceeding which followed as finally climaxed by the text of the trial hearing order as then authenticated by the penalties provided by a newly passed statute.