No. 96-707

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN THE MATTER OF GAME FARM
LICENSE NUMBER 319 OF WELCH E. BROGAN

APPEAL FROM:    District Court of the First Judicial District, In and for the County of Lewis
and Clark, the Honorable Thomas C. Honzel, Judge Presiding.

COUNSEL OF RECORD:

      For Appellant:

         John H. Tarlow, Harris, Tarlow & Stonecipher, Bozeman, Montana

      For Respondent:

         Robert N. Lane, Department of Fish, Wildlife and Parks,
         Helena, Montana

Submitted on Briefs:  May 30, 1997

Decided:
July
2, 1997
Filed:

_____
             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Welch Brogan appeals from the order of the First Judicial District Court, Lewis and Clark County, affirming the findings of fact, conclusions of law, and order of the Montana Department of Fish, Wildlife and Parks (Department) revoking his game farm license for five years.  We affirm.

The following issues are presented on appeal:

1.    Did the Department deprive Brogan of a vested right and attach additional disabilities to events that occurred in 1989 when it revoked his license pursuant to   87-4-

423, MCA, and   87-4-427, MCA?

    2.   Did the Department violate the prohibitions against double jeopardy and ex post facto laws when it revoked Broganþs license  pursuant to   87-4-427, MCA, based upon his 1989 convictions?

BACKGROUND

    Welch Brogan is the owner-operator of a game farm in Corwin Springs, Montana, where he breeds and raises elk for commercial sale.  Since 1946 he has held Game Farm License No. 319.  In May 1989, pursuant to   87-1-201, MCA (1989), the Department cited Brogan with two counts of failing to maintain his fence to prevent entry of wild animals and one count of capturing wild elk, alleged to have occurred on February 7, 1989.  Brogan was convicted on all counts in Park County Justice Court and convicted again in District Court.  We affirmed in State v. Brogan (1993), 261 Mont. 79, 862 P.2d 19.

    In November 1993, pursuant to   87-4-423, MCA, and   87-4-427, MCA, the Department commenced administrative proceedings to revoke Broganþs license based on his 1989 convictions, a 1993 conviction for possession of unlawfully taken wildlife in violation of   87-3-118(2), MCA (1991), which we affirmed in State v. Brogan (1995), 272 Mont. 156, 900 P.2d 284, and willful misconduct of a game farm operation which occurred at the same time as the acts supporting the 1993 conviction.

    Before the revocation hearing, Brogan and the Department stipulated that Broganþs 1989 convictions would alone be sufficient grounds for revocation of his license if the 1993 game farm statutes applied to his convictions.  The hearing examiner entered findings, conclusions, and a proposed order which recommended that Broganþs license be revoked for five years.  The Department adopted the hearing examinerþs findings and conclusions and entered its order revoking Broganþs license for five years.  Brogan petitioned for judicial review pursuant to   2-4-702, MCA.  He did not dispute the hearing examinerþs findings, but asserted that the Departmentþs application of   87-4-427(1)(d), MCA, to revoke his license violated state law by retroactively applying a statute and violated his constitutional right against ex post facto legislation and double jeopardy.

    The District Court affirmed the Departmentþs order, concluding that the Department did not violate state law by retroactively applying   87-4-427, MCA, because before 1993 Brogan was under a duty to operate his game farm in accordance with game farm statutes and regulations.  The court also concluded that revocation of Broganþs license did not violate the prohibition against ex post facto legislation or double jeopardy because the primary goal of the revocation was remedial and was not designed to punish Brogan.

    Brogan appeals.

DISCUSSION

    1.  Did the Department deprive Brogan of a vested right and attach additional disabilities to events that occurred in 1989 when it revoked his license pursuant to   87-4-423, MCA, and   87-4-427, MCA?

    This Court reviews an agencyþs conclusions of law to determine whether its interpretation of the law is correct.  Steer, Inc., v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

    Section 1-2-109, MCA, provides, "No law contained in any of the statutes of Montana is retroactive unless expressly so declared."  A retroactive law "takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed."  Porter v. Galarneau (1996), 275 Mont. 174, 183, 911 P.2d 1143, 1148-49.

    Brogan argues that the Departmentþs attempt to revoke his license pursuant to 87-4-423, MCA, and   87-4-427, MCA, violates   1-2-109, MCA, because it takes away

or impairs his vested right in his license and increases the disabilities attached to his 1989
convictions. The Department responds that Broganþs 1989 conduct would have been
grounds for revocation under the pre-1993 statutes and their 1993 amendments.
Therefore, the amended statutes do not increase the disabilities associated with Broganþs
conduct.

Broganþs violations of 87-1-201, MCA (1989), were grounds to revoke his
license in 1989. Before 87-4-423, MCA, and 87-4-427, MCA, became effective on
April 12, 1993, pursuant to 1993 Mont. Laws, ch. 315, 12-13, Brogan had a duty to
comply with statutes and administrative rules concerning the operation of his game farm.

Since 1983 it has been unlawful to capture game animals for use on a game farm.
Section 87-4-418, MCA. Beginning in 1984, game farm operators have been required
to follow certain fencing regulations. Rule 12.6.1503, ARM (1984) (repealed 1992).
When Brogan violated 87-1-201, MCA (1989), in 1989, prior to the amendment of
87-4-423, MCA, and the enactment of 87-4-427, MCA, the Department already could
have revoked his license if he failed to operate his game farm according to statutory
provisions or administrative rules. See 87-4-423, MCA (1983). Section 87-4-423,
MCA, and 87-4-427, MCA, were not new sanctions against Brogan. They were
additional means of enforcing Broganþs already-existing legal obligations associated with
the operation of his game farm.The Department did not deprive Brogan of a
vested right or attach additional disabilities to his 1989 convictions. Therefore, we hold
that the Department did not apply 1-2-109, MCA, retroactively when it revoked
Broganþs game farm license pursuant to 87-4-423, MCA, and 87-4-427, MCA.

2. Did the Department violate the prohibitions against double jeopardy and ex post
facto laws when it revoked Broganþs license pursuant to 87-4-427, MCA, based upon
his 1989 convictions?

Whether the Double Jeopardy or the Ex Post Facto Clauses are implicated in the
governmentþs course of conduct against an individual is a question of constitutional law.
Therefore, our review is plenary. State v. Schnittgen (1996), 277 Mont. 291, 295, 922
P.2d 500, 503; State v. Brander (Mont. 1996), 930 P.2d 31, 33, 53 St.Rep. 1340, 1341.

The Double Jeopardy Clause of the Fifth Amendment to the United States
Constitution provides that no person shall "be subject for the same offense to be twice put
in jeopardy of life or limb." Article II, Section 25 of the Montana Constitution provides
that no person shall "be again put in jeopardy for the same offense previously tried in any
jurisdiction." For purposes of this opinion we treat the protections afforded by both
provisions as co-extensive and will refer to both clauses collectively in the singular. See
Schnittgen, 922 P.2d at 503.

The Double Jeopardy Clause protects against three distinct abuses: 1) a second
prosecution for the same offense after acquittal; 2) a second prosecution for the same
offense after conviction; and 3) multiple punishments for the same offense. North
Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656,
664-65; City of Helena v. Danichek (1996), 277 Mont. 461, 463, 922 P.2d 1170, 1172.

We first consider Broganþs double jeopardy claim. Brogan argues that the third
situation described in Pearce applies because the Department is punishing him twice by
revoking his license for the same offenses which were already the subject of criminal
actions against him. In support of his argument he cites United States v. Halper (1989),
490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487.

In Halper, the defendant falsified sixty-five Medicare claims to obtain a $585
overpayment. The government successfully prosecuted him for fraud and he was fined
and sentenced to prison. At the conclusion of the criminal proceeding, the government
commenced an action for a statutory civil penalty under the False Claims Act which
would have imposed an additional fine of $130,000. The issue before the Court was
whether and under what circumstances a civil penalty may constitute punishment for

purposes of double jeopardy analysis.  Halper, 490 U.S. at 436.

The Supreme Court held that double jeopardy protections prohibit subjecting a defendant who has been punished in a criminal prosecution to an additional civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."  Halper, 490 U.S. at 449.  The Court concluded that the imposition of the full statutory amount violated double jeopardy protections by punishing Halper a second time for the same conduct for which he had been convicted.  Halper, 490 U.S. at 451.

Brogan argues Halper is not narrowly confined to a civil fine, but that it applies to any civil penalty, such as the revocation imposed by the Department. We decline to adopt such a broad reading of Halper.  In United States v. Ursery (1996), ___ U.S. ___, 116 S.Ct. 2135, 135 L.Ed.2d 549, the United States Supreme Court emphasized that Halper is a rare case and restricted its holding to monetary civil penalties:

Whether a particular sanction "cannot fairly be said solely to serve a remedial purpose" is an inquiry radically different from that we have traditionally employed in order to determine whether, as a categorical matter, a civil sanction is subject to the Double Jeopardy Clause.  Yet nowhere in Halper does the Court purport to make such a sweeping change in the law, instead emphasizing repeatedly the narrow scope of its decision. Halper, supra, at 449.

Ursery, ___ U.S. at ___, 116 S.Ct. at 2146 n. 2.

Since Ursery, this Court has applied a similar analysis to civil sanctions and their relation to double jeopardy.  In Schnittgen, a deputy sheriff was charged with criminal mischief as the result of an incident at a bar.  Based on his behavior that evening, Schnittgen was subsequently terminated from his position as deputy sheriff.  Schnittgen argued that the criminal prosecution violated the Double Jeopardy Clause because the same conduct underlying the criminal prosecution formed the basis for his employment termination.  The District Court dismissed the case.  We reversed, concluding that Schnittgenþs termination served "legitimate nonpunitive governmental objectives." Schnittgen, 922 P.2d at 510.

Schnittgenþs termination was rationally related to the remedial purpose of permitting the Phillips County Sheriffþs Office to protect the public safety and property and to promote public confidence and trust in those officers sworn to uphold and enforce the law.

Schnittgen, 922 P.2d at 509.

In the instant case, the District Court relied on Schnittgen and concluded that the revocation of Broganþs license served a remedial purpose. We agree.  The revocation of Broganþs license is rationally related to the remedial purpose of protecting Montanaþs wild elk populations.  Any punitive effect of the revocation is incidental to the Departmentþs purpose of safeguarding the integrity of Montanaþs wildlife.  The undisputed facts from Broganþs license revocation hearing demonstrate that Broganþs misconduct in operating his game farm endangered game animal populations through the possibility of genetic pollution and disease.  Broganþs license revocation remedies these problems by preventing him from commercially buying and selling wild animals.  We conclude that the revocation of Broganþs license serves a remedial purpose.

Brogan argues that the District Court erred when it concluded that  87-4-427, MCA, was not a penal statute because the express language of  87-4-427, MCA, its legislative history, and relevant case law indicate otherwise.  Brogan argues that the title of  87-4-427, MCA, which states "Revocation of License--criteria--penalties" and a plain reading of its provisions demonstrate that it is a penal statute.

Section 87-4-427(1), MCA, provides:

The department may revoke any game farm license or impose any of the penalties or conditions specified in subsection (3) if the licensee or the

principal manager has committed or is responsible for any of the following acts or omissions. . . .

Although a statuteþs title and language are appropriate to determine legislative intent, this Court must also consider the nature of the sanction imposed on Brogan as well as the intent of the Legislature when it amended Montanaþs game farm statutes in 1993. Halper, 490 U.S. at 447;  Schnittgen, 922 P.2d at 506.  Broganþs five-year license revocation serves a legitimate nonpunitive governmental objective--the preservation of Montanaþs wildlife resources, a duty entrusted to the Department through its regulation of the game farm industry.  Additionally, the Departmentþs testimony before the House Fish and Game Committee shows that   87-4-427, MCA, was intended to remedy threats to Montanaþs wildlife.

The game farm issues that Montana has been addressing in recent months are not unique to our state--they are regional, national, and even international in scope.  The Department . . . has focused its attention on several biological issues, namely: 1) introduction of diseases/parasites, 2) hybridization, leading to genetic pollution of native wildlife species, and 3) habitat degradation as a result of feral populations of escaped game farm animals.

Hearing on H.B. 338 before the House Comm. on Fish and Game (Feb. 4, 1993) (statement of Pat Graham, Dept. of Fish, Wildlife and Parks).  We conclude that the legislative history of   87-4-427, MCA, demonstrates that it is a remedial statute.

Brogan cites State, Dept. of Livestock v. Sand Hills Beef (1981), 196 Mont.77, 639 P.2d 480, and Ballard v. Wyoming Pari-Mutuel Com'n (Wyo. 1988), 750 P.2d 286, to support his argument that   87-4-427, MCA, is a penal statute.  In Sand Hills, the Montana Department of Livestock sought to recover expenses associated with its supervision of cattle dipping.  This Court defined "penal statute," but the definition applied to the strict standard the Court used to determine the recovery of Department of Livestock expenses.  Sand Hills, 639 P.2d at 483.   Ballard involved an increase in a civil penalty and the length of a race horse trainerþs suspension after his horse tested positive for an unpermitted drug.  The Wyoming Supreme Court held that the increased fine and license suspension offended the ex post facto provisions of the United States and Wyoming Constitutions.  Ballard, 750 P.2d at 293.

We decline to adopt the reasoning of either Sand Hills or Ballard in this case.  The definition of a penal statute in Sand Hills was not necessary for the determination of the constitutional issue of double jeopardy or ex post facto legislation.  In addition, Ballard was decided in 1988, prior to Ursery or Schnittgen, which we conclude are more directly on point to the issues presented here.

Brogan also argues that Department of Revenue of Mont. v. Kurth Ranch (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767, supports his argument that his license revocation is punishment under the Double Jeopardy and Ex Post Facto Clauses of the United States and Montana Constitutions.  We disagree.  In Schnittgen, we followed the United States Supreme Courtþs narrower interpretation of Kurthþs applicability to double jeopardy issues.  Schnittgen, 922 P.2d at 509.  Unlike Kurth, there is a remedial purpose associated with the revocation of Broganþs license.  Furthermore, Kurth makes no mention of the Ex Post Facto Clause.  We emphasize that Halper and Kurth are limited "to their specific fact situations," Schnittgen, 922 P.2d at 509, and decline to extend their holdings to the case at bar.

Section 87-4-427, MCA, serves a remedial purpose and is not punitive or a penal statute.  Consequently, the Departmentþs revocation of Broganþs license was not punishment and did not violate Broganþs double jeopardy rights.  We hold that the Departmentþs revocation of Broganþs license pursuant to   87-4-427, MCA, based on his 1989 convictions does not violate the Double Jeopardy Clause of the United States Constitution or the Montana Constitution.

Brogan argues that the Department violated the prohibition against ex post facto legislation because  87-4-427, MCA, is a penal statute that was retroactively applied to his conduct in 1989.  Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution prohibit ex post facto laws.

Both parties argue there is a common standard for analyzing whether a punitive civil sanction violates the constitutional protections against ex post facto legislation and double jeopardy.  They suggest that a civil sanction which is in part remedial does not implicate the constitutional protections against ex post facto laws and double jeopardy, relying on Bae v. Shalala (7th Cir. 1995), 44 F.3d 489, 492-93 (citing Halper, 490 U.S. at 447-49).

In Bae, the Seventh Circuit held that "[F]or a criminal or penal law to be ex post facto . . . it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  Bae, 44 F.3d at 492. We explained above that  87-4-427, MCA, is not a penal statute.  Nor is  87-4-427, MCA, a criminal statute.  Therefore, we decline to adopt the partiesþ argument from Bae that a punitive civil sanction implicates the constitutional protection against ex post facto legislation.

This Court uses a two part-test to determine whether a statute violates the prohibition against ex post facto laws.  First, the law must be retrospective; that is, it must "chang[e] the legal consequences of actions committed before its effective date." State v. Leistiko (1992), 256 Mont. 32, 36-37, 844 P.2d 97, 100 (citing Miller v. Florida (1987), 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360-61).  Second, it must disadvantage the offender affected by it--the law must be more onerous than the prior law.  Leistiko, 844 P.2d 100 (citing Dobbert v. Florida (1977), 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344, 357).

When Brogan violated  87-1-201, MCA (1989), in 1989, the Department was already authorized to revoke his license.  Section 87-4-427, MCA, did not change the legal consequences of Broganþs 1989 convictions.  Section 87-4-427, MCA, is not a retrospective law.  Because  87-4-427, MCA, is not retrospective, it is unnecessary to determine whether it disadvantaged Brogan.

We hold that the Departmentþs revocation of Broganþs license pursuant to  87-4-427, MCA, did not violate the prohibition against ex post facto legislation.

The District Courtþs order affirming the Departmentþs revocation of Broganþs game farm license is affirmed.

/S/  J. A.  TURNAGE

We concur:

/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER