No. 92-088

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

WILLIAM GERALD LEISTIKO,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         Gary G. Doran, Moore & Doran, Kalispell, Montana

     For Respondent:

         Marc Racicot, Attorney General; Carol
Schmidt, Assistant Attorney General; Thomas Esch,
Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: October 14, 1992

Decided: December 17, 1992

FILED

DEC 17 1992

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant William Gerald Leistiko appeals the Order of Revocation issued by the District Court of the Eleventh Judicial District, Flathead County. The Order of Revocation continued Leistiko's suspended sentence and required him to pay an additional $10,000 in restitution to the victim. We set aside the portion of the order requiring $10,000 additional restitution.

The sole issue for our review is whether the District Court could order the defendant to pay $10,000 additional restitution after Leistiko violated the terms and conditions of his suspended sentence.

William Gerald Leistiko (Leistiko) attended a New Year's Eve party on December 31, 1984, with his girlfriend. The couple argued throughout the evening and Leistiko subsequently left the party and returned with a 9 mm. automatic pistol, which was ultimately wrested from him by others at the party. He returned the morning of January 1, 1985, with a .22 semi-automatic pistol, and shot his girlfriend in the back as she attempted to phone law enforcement officers. The victim sustained injuries which caused permanent paralysis from the waist down. Leistiko was charged with aggravated assault and attempted deliberate homicide.

The parties and the victim signed a pretrial agreement on July 16, 1985, wherein Leistiko agreed to plead guilty to the charge of aggravated assault in exchange for the State's dropping the attempted deliberate homicide charge. On September 5, 1985, the District Court sentenced Leistiko to a twelve-year prison term with

2

nine years suspended and a consecutive five-year term for the use of a weapon. The court also imposed a $20,000 "fine" as financial restitution to the victim, with monthly payments commencing one month after his release from Montana State Prison.

While in prison, Leistiko paid $60 per month restitution from money he earned there, although this was not required by his sentence. After his parole on September 22, 1986, following thirteen months incarceration, he made monthly payments of $250 as required by his sentence. He later returned to his former employment and began making payments of $400 per month. At the time of the final revocation hearing, he had paid $12,400 of the $20,000 fine.

On September 9, 1989, a random urinalysis tested positive for cocaine. Leistiko was given another chance on parole and entered Rocky Mountain Treatment Center in Great Falls on October 3, 1989. He completed chemical dependency treatment there and discharged his aftercare requirements on January 12, 1990. On February 8, 1990, another urinalysis tested positive for cocaine. The Board of Pardons then revoked Leistiko's parole and again incarcerated him in the Montana State Prison.

On May 12, 1990, the State filed a petition to revoke Leistiko's suspended sentence. On May 23, 1990, the District Court conducted a hearing on the petition and found Leistiko in violation of terms of his suspended sentence, but reserved judgment with regard to that revocation until Leistiko completed an intensive addiction treatment program in prison. On December 6, 1990, the

Court allowed Leistiko to continue this treatment at the Providence Center in Great Falls so that he could avail himself of the Great Falls Pre-release Center's programs. On August 11, 1991, Leistiko was discharged from the Great Falls Pre-release Center.

On October 11, 1991, Leistiko filed a motion to reduce his monthly payments to $100 per month based on his financial situation. At the final revocation hearing, the District Court heard testimony from both the defendant and the victim as well as the recommendation from the prosecutor that justice would not be served by sending Leistiko back to prison. In an order dated December 10, 1990, the District Court continued the suspended sentence, allowed reduced payments of $100 for three months and increased the restitution by $10,000.

I

Did the District Court err when it ordered the defendant to pay an additional $10,000 to his victim after he violated the terms and conditions of his suspended sentence while on parole?

Leistiko contends that the District Court had no authority to increase the original sentence by an additional $10,000 in restitution. He relies on the version of § 46-18-203, MCA, which was in effect at the time of the crime and at the time of initial sentencing. Section 46-18-203, MCA (1983), then provided:

**Revocation of suspended or deferred sentence.** (1) A judge . . . who has suspended the execution of a sentence . . . of imprisonment under 46-18-201 or his successor is authorized in his discretion to revoke the suspension or impose sentence and order the person committed. . . .

4

However, the District Court relied on the 1991 revision of § 46-18-203, MCA, in its sentencing order. It provides in pertinent part:

> **Revocation of suspended or deferred sentence.** (1) Upon the filing of a petition for revocation, accompanied by an affidavit showing probable cause that the defendant has violated any condition of a sentence . . . the court may issue an order for a hearing on revocation. . . .
> . . .
> (7) If the court finds that the defendant has violated the terms and conditions of the suspended or deferred sentence, the court may:
> (a) continue the suspended or deferred sentence without a change in conditions;
> (b) continue the suspended sentence with modified or additional terms and conditions;
> (c) revoke the suspension of sentence and require the defendant to serve either the sentence imposed or any lesser sentence . . .

Section 46-18-203, MCA (1991), (emphasis supplied).

Leistiko contends that he is entitled to the benefits of the former statute. Under the statute in effect when he committed the crime on January 1, 1985, the District Court could either continue the suspended sentence under the original terms, or revoke the suspended sentence and order a defendant to serve the remainder of his prison term. The 1991 revision of § 46-18-203, MCA, grants authority to the district courts to add terms and conditions which are not part of the original sentence.

That legislative grant of authority, however, cannot violate the constitutional rights of a defendant over whom the District Court has jurisdiction. Article I, Section 10 of the United States Constitution prevents state legislatures from enacting ex post facto legislation. Similarly, Article II, Section 31 of the Montana Constitution prohibits the same. One of the United States Supreme Court's earliest opinions provides a definition of ex post

5

facto laws and a rationale for the constitutional prohibition. See Calder v. Bull (1798), 3 Dall. 386, 3 U.S. 269, 1 L.Ed. 648. Justice Chase's opinion in Calder became well accepted as to those legislative acts which were prohibited by the ex post facto clause in Art. I, § 10 of the United States Constitution. This interpretation of the clause was subsequently summarized as follows:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

Beazell v. Ohio (1925), 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216, (emphasis supplied).

The Framers had a dual purpose in banning ex post facto legislation: (1) to give fair warning to individuals of what conduct is punishable, and (2) to restrain federal and state governments from enacting arbitrary and potentially vindictive legislation. Calder, 3 Dall. at 387-90. An increase in the severity of a criminal punishment compared with that authorized at the time the act was committed is a criminal conduct measure coming within the ban on ex post facto laws. Weaver v. Graham (1981), 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d, 17, 22. Critical to relief under the ex post facto clause is the lack of fair notice and governmental restraint when a legislature increases punishment beyond what was prescribed when the crime was committed. Weaver, 450 U.S. at 30.

6

We use a two-part test to determine whether a statute violates the ban on ex post facto laws: (1) the law must be retrospective, and (2) it must disadvantage the offender affected by it. Miller v. Florida (1987), 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360-61. A law is retrospective if it changes the legal consequences of actions committed before its effective date. Miller, 482 U.S. at 430. At the time Leistiko shot his girlfriend, § 46-18-203, MCA, did not authorize the District Court to modify or add terms and conditions in a revocation proceeding. Clearly, the revised statute changes the legal consequences of Leistiko's crime by allowing the District Court to change the sentence.

To meet the second prong of the test, the United States Supreme Court has said, "It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law." Dobbert v. Florida (1977), 432 U.S. 282, 294, 97 S.Ct. 2290, 2299, 53 L.Ed.2d 344, 357. The District Court's application of the new law here added $10,000 in restitution to be paid before the end of the suspended sentence. This puts a substantial additional burden upon Leistiko, both financially and in terms of violations which can subject him to additional incarceration. We conclude that the additional restitution ordered in this case constitutes an unconstitutional increase in punishment which Leistiko could not have foreseen at the time he committed the crime or when he entered into the plea agreement with the prosecutor before sentencing. We conclude that the District Court could not increase Leistiko's sentence by ordering $10,000 additional restitution.

7

We hold that under Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution, the District Court could not order the defendant to pay his victim $10,000 additional restitution after the defendant violated the terms and conditions of his suspended sentence while on parole.

Vacated in part.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

December 17, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary G. Doran
Moore & Doran
P.O. Box 1198
Kalispell, MT    59903-1198

Hon. Marc Racicot, Attorney General
Carol Schmidt, Assistant
Justice Bldg.
Helena, MT    59620

Ted O. Lympus
County Attorney
P.O. Box 1516
Kalispell, MT  59903-1516

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy