# TERRY ALLEN LANGFORD, Petitioner,
## v.
# STATE OF MONTANA; DEPARTMENT OF CORRECTIONS, RICK DAY, DIRECTOR; WARDEN MIKE MAHONEY; ATTORNEY GENERAL JOE MAZUREK, Respondents.

No. 97-586.
Submitted December 2, 1997.
Decided December 30, 1997.
54 St.Rep. 1522.
287 Mont. 107.
951 P.2d 1357.

108

JUSTICE HUNT specially concurred.

For Appellant: **Michael Donahoe**, Attorney at Law, Helena.

For Respondents: **Honorable Joseph P. Mazurek**, Attorney General; **John Paulson**, Assistant Attorney General, Helena.

JUSTICE GRAY delivered the Opinion and Order of the Court.

This is an original proceeding wherein Terry Allen Langford (Langford) has petitioned this Court, pursuant to Rule 17, M.R.App.P., and § 3-2-205(2), MCA, for a writ of injunction enjoining the State of Montana (State) from executing him under § 46-19-103, MCA, as amended effective March 19, 1997.

## BACKGROUND

On January 5, 1989, Langford entered pleas of guilty to two counts of deliberate homicide, two counts of aggravated kidnaping, and one count each of aggravated burglary, robbery and theft. The Third Judicial District Court, Powell County, sentenced Langford to death for each of the deliberate homicide and aggravated kidnaping counts, as well as to various terms of imprisonment for each of the remaining

counts. We affirmed Langford's convictions and sentences in *State v. Langford* (1991), 248 Mont. 420, 813 P.2d 936.

Langford subsequently filed two unsuccessful petitions for post-conviction relief (*see State v. Langford* (1991), 249 Mont. 385, 819 P.2d 151; *State v. Langford* (1991), 250 Mont. 542, 822 P.2d 1092) and, thereafter, the District Court scheduled Langford's execution for January 17, 1992. Pursuant to the then-current version of § 46-19-103(3), MCA, Langford affirmatively elected that death be imposed by hanging rather than by lethal injection.

In December of 1991, Langford moved the District Court for a declaration that execution by hanging is cruel and unusual punishment which violates the Eighth Amendment to the United States Constitution. The court denied Langford's motion, determining that his election to be executed by hanging rendered his cruel and unusual punishment argument moot; we affirmed the District Court on appeal. *State v. Langford* (1992), 254 Mont. 44, 833 P.2d 1127.

Langford also petitioned the United States District Court, District of Montana, for a writ of habeas corpus, including within the petition an Eighth Amendment claim that execution by hanging constituted cruel and unusual punishment. The federal trial court denied relief, on the merits, and the United States Court of Appeals for the Ninth Circuit affirmed. *Langford v. Day* (9th Cir. 1997), 110 F.3d 1380. Langford then petitioned the United States Supreme Court for a writ of certiorari on July 11, 1997.

During the pendency of Langford's federal habeas corpus proceedings, and prior to his July 11, 1997 petition for writ of certiorari, the Montana Legislature amended § 46-19-103, MCA, effective March 19, 1997, to remove hanging as a means of execution and provide that the punishment of death shall be inflicted in all cases by means of lethal injection. 1997 Mont. Laws Ch. 92, Sec. 1. As a result of this legislative amendment, the Eighth Amendment claim in Langford's federal habeas corpus proceeding—that hanging is a cruel and unusual punishment—became moot and nonjusticiable. As a result, Langford did not include his Eighth Amendment claim in his petition for writ of certiorari to the Supreme Court. The Supreme Court denied Langford's petition on October 6, 1997.

In this original proceeding, Langford asserts that the State impermissibly truncated his ability to fully appeal his death sentence to the Supreme Court by removing hanging as a method of execution in Montana and, thereby, nullifying his federal Eighth Amendment claim of cruel and unusual punishment. He contends that the legis-

lative amendment deprived him of his final opportunity to avoid the death penalty because, if the Supreme Court had held that hanging is an unconstitutional punishment, the State would have been precluded from executing him by any other means under the former version of § 46-19-103, MCA. Langford also contends that the amendment to § 46-19-103, MCA, is unconstitutional as applied to him because it is either an *ex post facto* law or a bill of attainder. He argues, on these bases, that the State should be permanently enjoined from executing him under the current version of § 46-19-103, MCA.

## DISCUSSION

## I. JURISDICTION

As a threshold matter, we must address the propriety of exercising jurisdiction over Langford's petition for injunctive relief. This Court has original jurisdiction to issue such writs as are provided by law, including writs of injunction. Art. VII, Sec. 2, Mont. Const.; § 3-2-202(1), MCA. In determining whether to exercise such original jurisdiction in any given case, however, we examine the substance of the petition in light of the statutory criteria relating to our issuance of a writ of injunction. Under those criteria, which are set forth in the disjunctive, an action for a writ of injunction may not be commenced in this Court unless the State is a party to the action, the issue is of public interest or the rights of the public are involved. Section 3-2-205(2), MCA. Furthermore,

> [t]he supreme court is an appellate court but it is empowered by the constitution of Montana to hear and determine such original and remedial writs as may be necessary or proper to the complete exercise of its jurisdiction. The institution of such original proceedings in the supreme court is sometimes justified by circumstances of an emergency nature, as when a cause of action or a right has arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper.

Rule 17(a), M.R.App.P.

The State is clearly a party to this action by virtue of being a named respondent in Langford's petition for injunctive relief. Moreover, the issue central to Langford's petition implicates the State's involvement as a party to the underlying controversy in two senses. First, it was the act of the State Attorney General (AG) in advocating

the amendment of, and the State Legislature in amending, § 46-19-103, MCA, which resulted in Langford's asserted inability to include his Eighth Amendment claim in his petition for writ of certiorari to the Supreme Court. Second, it is the State which ultimately requests that the procedures contained in the current version of § 46-19-103, MCA, be applied in executing Langford's death sentence, and that is the precise action which Langford requests this Court to enjoin.

Furthermore, the public has an interest in establishing and maintaining the validity of state actions—or in establishing that a state action is invalid—in a proceeding which attempts to curtail the State's ability to enact, amend and enforce state legislation. This public interest is especially apparent in the context of state criminal laws and procedure and the imposition of the death penalty thereunder. We conclude, therefore, that at least two of the three criteria in § 3-2-205(2), MCA—that the State be a party to the proceeding and that the issue involved be of public interest—are met in this case.

The State argues that Langford has failed to allege emergency circumstances or other conditions making trial court consideration and subsequent appellate review an inadequate remedy, as required under Rule 17(a), M.R.App.P., and, therefore, that the petition is insufficient to justify our exercise of original jurisdiction. In this regard, we need only take judicial notice of the fact that, after Langford filed his petition for injunctive relief, the District Court scheduled Langford's execution for February 24, 1998. With less than two months remaining before that date, we conclude that circumstances of an emergency nature exist in this case which render due consideration in the trial court and appeal to this Court an inadequate remedy. Therefore, we accept jurisdiction of Langford's petition for a writ of injunction.

## II. INJUNCTIVE RELIEF

As a backdrop to our resolution of the merits of Langford's arguments in support of his petition, it is appropriate to outline the underlying premise on which Langford bases his request for injunctive relief. Section 46-19-103, MCA, governs the execution of a death sentence in Montana. Prior to the 1997 amendment, § 46-19-103, MCA, provided two methods of execution: hanging and lethal injection; a person sentenced to death would be executed by hanging unless he or she affirmatively elected to be executed by lethal injection. Section 46-19-103(3), MCA (1995). When Langford's original execution date was set for January 17, 1992, he affirmatively elected

to be executed by hanging. Subsequently, Langford proceeded with his state and federal claims that hanging is cruel and unusual punishment. As set forth above, we ultimately held that his cruel and unusual punishment argument was moot, based on his election to be executed by hanging. *See Langford*, 833 P.2d at 1129. Langford then proceeded to raise his Eighth Amendment claim in the federal court.

While his federal action remained pending at the Ninth Circuit, the Montana Legislature amended § 46-19-103, MCA, effective March 19, 1997, to provide that lethal injection is the only method of execution in Montana. The effect of the amendment removing hanging as a method of execution was to moot Langford's Eighth Amendment cruel and unusual punishment argument and preclude his ability to raise that issue in his petition for writ of certiorari to the Supreme Court.

Langford's argument regarding the effect of the statutory amendment on his attempt to avoid the imposition of the death penalty has two aspects. First, he contends that it was quite probable that the Supreme Court would have ruled in his favor on his Eighth Amendment claim had he been able to present it in his petition for writ of certiorari. Second, Langford asserts that, once the Supreme Court held hanging was cruel and unusual punishment, the State would have no legal process by which to execute him under the old version of § 46-19-103, MCA. This assertion is based on the language of § 46-19-103(3), MCA (1995), which provided that the punishment of death must be inflicted by hanging or, at the election of the defendant, by lethal injection and that, if the defendant wishes to choose execution by lethal injection, he or she must state that election at the hearing to set the execution date. According to Langford, if he refused to affirmatively elect death by lethal injection at the hearing to set a new execution date, the State would have no other means under the statute by which to execute him and, by his silence, he would avoid being put to death. Thus, Langford argues that the 1997 amendment to § 46-19-103, MCA, has eliminated his ability to present an argument whereby he could avoid execution altogether.

Langford's specific arguments in support of his petition for injunctive relief fall into three categories: (A) the amendment to § 46-19-103, MCA, as applied to him, is an *ex post facto* law which violates Article II, Section 31 of the Montana Constitution; (B) the amendment is a bill of attainder which violates Article II, Section 30 of the Montana Constitution; and (C) the amendment violates his rights under the Montana Constitution because it truncated his ability to

pursue his Eighth Amendment claim before the Supreme Court and, assuming the Supreme Court held in his favor, thereby denied him the opportunity to avoid imposition of the death penalty. We address each argument in turn.

## A. *Ex Post Facto* law

■ Langford asserts that the amendment to § 46-19-103, MCA, as it applies to him, constitutes an *ex post facto* law in violation of Article II, Section 31 of the Montana Constitution. A statute is prohibited as *ex post facto* if it punishes as a crime an act which was not unlawful when committed, if it makes the punishment for a crime more burdensome or if it deprives the person charged with a crime of any defense available under the law at the time the act was committed. *State v. Leistiko* (1992), 256 Mont. 32, 36, 844 P.2d 97, 99-100 (citing *Beazell v. Ohio* (1925), 269 U.S. 167, 169-70, 46 S.Ct. 68, 68, 70 L.Ed. 216, 217). Langford argues that his pursuit of his Eighth Amendment claim is a "defense" as contemplated under the *ex post facto* prohibition because, had he been successful on this claim, "it would have permanently crippled the State from carrying out Langford's death sentence under former § 46-19-103."

■ Insofar as it is relevant here, the *ex post facto* clause is a prohibition against statutes which deprive a person of a defense to a charged crime. *See Leistiko*, 844 P.2d 99-100. In this case, Langford is not asserting a defense to a crime with which he was charged. He has already pleaded guilty to, and been sentenced for, the crimes he committed and the validity of those convictions is not at issue here. Section 46-19-103, MCA, comes into play only after a defendant has been convicted and a death sentence has been imposed and, at that point, it addresses only the procedure by which the sentence is to be carried out. Changes in the procedures by which a death sentence is executed do not affect substantial rights of a prisoner in such a manner as to implicate the prohibition against *ex post facto* laws. *See, e.g., McKenzie v. Day* (9th Cir. 1995), 57 F.3d 1461, 1469.

■ Langford asserts, however, that the amendment to § 46-19-103, MCA, was more than a mere "procedural" change because, if his Eighth Amendment claim had been successful in the Supreme Court, "it would have provided a statutory, due process type immunity protecting Langford from execution altogether" under the prior version of the statute. This argument is not persuasive. Both the federal district court and the Ninth Circuit held against Langford on the merits of his Eighth Amendment cruel and unusual punishment

claim and his assertion that the Supreme Court "very well could have been convinced to grant him relief" is speculative, to say the least. Moreover, we cannot assume that, had the Supreme Court held in his favor on the Eighth Amendment claim, Langford's interpretation regarding the effect of that holding on the prior version of § 46-19-103, MCA, also would prevail. Thus, Langford's purely conjectural assertions that he potentially would have a due process-type right to avoid execution under the earlier version of the statute does not create a current substantive right which would be infringed by an amendment altering only the procedure by which his sentence is executed.

We conclude that § 46-19-103, MCA, as amended, is not an *ex post facto* law under Article II, Section 31 of the Montana Constitution, as applied to Langford.

### B. Bill of Attainder

Langford also argues that the 1997 amendment to § 46-19-103, MCA, constitutes a bill of attainder in violation of Article II, Section 30 of the Montana Constitution. Bills of attainder are " 'legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial ....' " *State v. Fitzpatrick* (1984), 211 Mont. 341, 342-43, 684 P.2d 1112, 1113 (quoting *United States v. Lovett* (1946), 328 U.S. 303, 315-16, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252, 1259).

The amendment to § 46-19-103, MCA, clearly applies only to an easily ascertainable group—namely, certain persons sentenced to the death penalty. However, since those persons already have been convicted and sentenced to the death penalty, the amendment clearly does not inflict a punishment on that group of persons without a judicial trial. Indeed, § 46-19-103, MCA, does not inflict punishment at all, it merely delineates the procedure by which a previously imposed punishment is carried out. Langford's sentence—that is, his "punishment"—is death and § 46-19-103, MCA, as amended, does not change that sentence. Thus, the 1997 amendment to § 46-19-103, MCA, which removed hanging as a method of execution in Montana, does not constitute a bill of attainder.

Langford argues, however, that the punishment inflicted by the statutory amendment is the preemptive extinguishment of his ability to have the Supreme Court address his Eighth Amendment claim regarding hanging. Essentially, Langford is contending that the Legislature amended § 46-19-103, MCA, in retaliation for his contin-

ued pursuit of his Eighth Amendment claim in the federal courts and, in this regard, he has provided us with transcripts of the legislative hearings on the bill which resulted in the 1997 amendment to § 46-19-103, MCA. Because the State does not dispute either the completeness or the accuracy of the transcripts, we accept them as part of the legislative history of the amendment for purposes of this case only and conclude that nothing in the record before us supports Langford's claim that the amendment was enacted specifically to "punish" him.

The transcripts reveal various reasons for amending § 46-19-103, MCA. One such reason was to decrease the costs associated with death penalty cases by limiting the potential issues for appeal; others were that execution by hanging requires much more preparatory work by, and technical expertise from, officials carrying out the execution than does lethal injection and that human error is more of a factor in a hanging than in lethal injection executions. The hearing transcripts do not indicate, or even suggest, that the amendment to § 46-19-103, MCA, was enacted with the specific purpose of cutting off Langford's ability to pursue his Eighth Amendment claim. Nor do they support Langford's assertion that § 46-19-103, MCA, was amended in retribution for his efforts to challenge the constitutionality of hanging as a method of execution.

We conclude that the amendment to § 46-19-103, MCA, does not inflict punishment without a judicial trial and, therefore, that it is not a bill of attainder prohibited by Article II, Section 30 of the Montana Constitution.

### C. Violation of other rights under the Montana Constitution

Finally, Langford argues that Article II, Sections 3, 4, 16, 17, 18, 19, 24 and 34 of the Montana Constitution protect his right to seek federal relief from his conviction and sentence and that the amendment to § 46-19-103, MCA, violated these constitutional provisions by denying him the ability to present his Eighth Amendment claim to the Supreme Court. He does not present substantive arguments under each delineated constitutional section, but merely directs his arguments in a general manner to his overall contention that the State should be enjoined from executing him under the current version of § 46-19-103, MCA. We address the arguments accordingly.

A large portion of Langford's brief in support of his petition is devoted to discussing the role of the AG in the 1997 amendment to § 46-19-103, MCA. It is undisputed that the AG was a major proponent of the amendment and presented testimony during the legisla-

tive hearings. Langford infers that the AG's support of the amendment arose from the AG's recognition that Langford was likely to succeed on his Eighth Amendment claim in the Supreme Court and that his successful claim would preclude the State from executing him under the old version of § 46-19-103, MCA. Therefore, according to Langford, the AG advised the Legislature to amend the statute to ensure that he would be denied the opportunity to make his Eighth Amendment argument. Langford's argument in this regard is not persuasive.

First, neither the transcripts of the legislative hearings nor any other evidence of record supports Langford's inference regarding the AG's motives vis-a-vis the 1997 amendment to § 46-19-103, MCA. While the transcripts reveal that the AG believed the amendment would reduce the available issues for appeal in death penalty cases, it is also clear that the AG's desire to reduce available appeal issues was based on an interest in reducing the time and money expended by the State in death penalty appeals and collateral proceedings rather than on a concern that hanging might be found to be unconstitutional. If there are fewer issues available to appeal, death penalty cases can be resolved more quickly and with less expense to the State.

Moreover, Langford's contentions to the contrary notwithstanding, the transcripts contain no admission by the AG that hanging is cruel and unusual punishment. While Mike Mahoney, warden of the Montana State Prison, made several statements during the legislative hearings to the effect that lethal injection is more humane than hanging, no one testifying on behalf of the AG made such statements. Furthermore, a statement that hanging may be less humane than another execution method does not equate to an admission that hanging is cruel and unusual punishment. The transcripts of the legislative hearings on the amendment simply do not support Langford's assertions that the AG, acting on behalf of the State, either admitted that hanging is cruel and unusual punishment or was concerned that an Eighth Amendment claim regarding hanging would be successful in the Supreme Court.

Additionally, the legislative hearing transcripts establish that, while the AG supported the amendment to § 46-19-103, MCA, the AG did not initiate the bill which resulted in the amendment. In the House Judiciary Committee hearing, Representative Bob Clark stated that he was sponsoring the bill at the request of the Montana Department of Corrections (DOC). Furthermore, Warden Mahoney

testified that the reasons the DOC proposed the amendment were, first, that the preparatory work and technical expertise required to carry out an execution by hanging far exceeds that necessary for the preparation of a lethal injection; second, that human error is a greater factor in execution by hanging; and third, that there is greater expense associated with the preparation for, and execution of, a hanging than with a lethal injection. Thus, not only was the AG not the initiator of the amendment, the record indicates that the DOC proposed the amendment for primarily practical reasons and that those reasons were not related to Langford in particular or to his pending Eighth Amendment claim in federal court.

Langford's claims regarding the AG's motives for supporting the amendment of § 46-19-103, MCA, are not supported by the record before us. Thus, they do not buttress his overall claim that we should enjoin the State from executing him under the current version of § 46-19-103, MCA.

Langford's final argument in support of his petition for injunctive relief is that, by mooting his Eighth Amendment claim prior to its presentation to the Supreme Court, the amendment to § 46-19-103, MCA, rendered the time spent in pursuing that claim retroactively useless and, therefore, the time he has spent on death row while arguing that claim should be charged to the State as a form of cruel and unusual delay. In support of this argument, he cites the dissenting opinion of Ninth Circuit Judge James R. Browning in *McKenzie v. Day* (9th Cir. 1995), 57 F.3d 1493, 1494, in which Judge Browning stated that a stay of execution should be granted to allow the trial court to consider McKenzie's argument that a 20-year delay in executing his death sentence was, in itself, cruel and unusual punishment. A dissenting opinion is not precedent and does not provide support for Langford's argument here. Moreover, while nearly nine years have passed since Langford was sentenced to the death penalty in 1989, this lapse of time does not begin to approach the 20-year delay which occurred in the McKenzie case.

Furthermore, we observe that Langford's Eighth Amendment claim was not the only claim he pursued in his federal court habeas corpus proceeding. He also asserted that he should be allowed to withdraw his guilty pleas because he received ineffective assistance of counsel during the pleading and sentencing phases of his case. Both the federal trial court and the Ninth Circuit addressed Langford's ineffective assistance claim on the merits and Langford apparently included it in his petition for writ of certiorari to the Supreme Court.

Thus, the time spent on death row while Langford pursued his state and federal court remedies was not spent entirely on his Eighth Amendment claim and cannot be charged to the State as "cruel and unusual delay" relating to the 1997 amendment to § 46-19-103, MCA.

We conclude that Langford has not established that the 1997 amendment to § 46-19-103, MCA, violated his rights under Article II, Section 3, 4, 16, 17, 18, 19, 24 or 34 of the Montana Constitution by impermissibly denying him the ability to present his Eighth Amendment cruel and unusual punishment argument to the Supreme Court.

The Court having accepted jurisdiction of this original proceeding and having concluded that Langford has not established a violation of any of the provisions of the Montana Constitution on which his petition is grounded,

IT IS ORDERED that Langford's petition for writ of injunction is DENIED.

CHIEF JUSTICE TURNAGE, JUSTICES TRIEWEILER, REGNIER, NELSON and LEAPHART concur.

JUSTICE HUNT specially concurs.

I concur in the result of the opinion, but not in all that is said.