No. 98-674

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 195

295 Mont. 394

983 P.2d 985

IN THE MATTER OF TANNER YOUNG,

A Youth

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Derik Pomeroy, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Tammy K. Plubell, Assistant Attorney General, Helena, Montana; Marty Lambert, Gallatin County Attorney, Jane Mersen, Deputy Gallatin County Attorney, Bozeman, Montana

---

Submitted on Briefs: May 13, 1999

Decided: August 19, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1. ¶This is an appeal by Tanner Young (Young) from the October 16, 1998 order of the Eighteenth Judicial District Youth Court, Gallatin County, transferring supervision of two Youth Court cases to the District Court and imposing conditions of probation. We reverse and remand for further proceedings consistent with this opinion.

## Background

1. ¶In 1993, Young entered into a consent decree with the State to dispose of three felony property offenses. Though ordered to pay some $3,788 in restitution while on probation, Young paid only $125. It does not appear that the State took any action to enforce the restitution agreement, however.

2. ¶On March 15, 1995, Young was adjudicated a delinquent youth in Cause No. DJ-95-03 by reason of his admitting the commission of felony theft and misdemeanor drug and assault charges. The trial court advised Young that the maximum disposition of his case was commitment to the Department of Family Services (DFS) until age 19. The court then committed Young to the DFS until age 18 with certain conditions. No restitution was required, but, at the State's request and over Young's objection, the trial court reinstated Young's restitution obligation from the 1993 consent decree.

3. ¶The same day DJ-95-03 was disposed of, Young committed new offenses involving felony and misdemeanor assault, misdemeanor theft, and criminal trespass to vehicles. With the exception of the felony assault charge, Young admitted to these offenses after being advised by the court that the maximum disposition was placement in a state institution until he was 19.

4. ¶On July 19, 1995, the Youth Court conducted a combined hearing on the final dispositions of DJ-95-03 and the subsequent cause, DJ-95-31. At the time, Young was 17. The court imposed no further restitution requirement, but committed the youth to the Department of Corrections (DOC) until he reached 19 and required his placement in a residential treatment program in Orem, Utah.

5. ¶On January 22, 1997, at the State's request and pursuant to § 41-5-208, MCA, the Youth Court ordered that supervision of both DJ-95-03 and DJ-95-31 be transferred from the Youth Court to the District Court for direct supervision by Adult Probation and Parole. The court further ordered Young to report within five days.

6. ¶Young failed to report, however, and on May 14, 1997, the State petitioned to revoke the July 19, 1995 disposition. On July 31, 1998, Young appeared before the court on a summons and denied the allegations in the petition to revoke. Moreover,

Young, now age 20, argued against, and following his appearance, formally objected to the youth court's transfer of his case to District Court. Young maintained that § 41-5-208, MCA, did not apply to DJ-95-03, because this case was disposed of before the statute was enacted. As to DJ-95-31, Young argued that the only reason the State had sought transfer was to obtain his outstanding restitution, but that no restitution was owing on this case. He also contended that he had successfully completed the residential treatment program in Utah per the court's disposition order, and that the application of § 41-5-208, MCA, violated the *ex post facto* provisions of the Montana and federal constitutions because the law was not in effect when he committed any of the offenses and because applying the transfer statute to him would increase the possible penalty he faced for the offenses to which he previously admitted.

7. ¶The State disagreed arguing that Young's two cases were finally disposed of on July 19, 1995, following the effective date of § 41-5-208, MCA, of April 14, 1995. Accordingly, on October 15, 1998, the court held a hearing on whether this statute applied to Young's case.

8. ¶At the hearing the State pointed out that Young had failed to make the full restitution payments ordered by the court in 1993 and reinstated in 1995. The State also noted that, while Young had completed the Utah residential treatment program by the time he turned 18, he had not completed and was not expected to be able to complete payment of restitution by his 19th birthday. Hence, the State requested transfer of Young's cases to District Court so that he could be supervised until he was 25.

9. ¶The court concluded that § 41-5-208, MCA, was in effect at the time it entered the final disposition of Young's two cases in July 1995. Consequently, the court ordered Young's cases transferred to the District Court, but also ordered that as soon as Young paid his restitution, then amounting to $2,975.88, his probation would terminate. Young appeals.

### Issue

1. ¶Did the court's application of § 41-5-208, MCA, violate the *ex post facto* provisions of the Montana and federal constitutions?

## Discussion

1. ¶The trial court's determination that § 41-5-208, MCA, applied to Young's cases is a conclusion of law. Our standard of review of a court's conclusion of law is whether the court's interpretation of the law is correct. *See State v. Romain*, 1999 MT 161, ¶ 14, ___ P.2d ___, ¶ 14, 56 St.Rep. 638, ¶ 14 (citation omitted).

2. ¶On appeal Young argues that the court's application of § 41-5-208, MCA, to transfer his Youth Court cases to the District Court for supervision violates the *ex post facto* provisions of the Montana and federal constitutions. The State now concedes that Young's argument is correct.

3. ¶Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution both prevent the State legislature from enacting *ex post facto* laws. In *State v. Leistiko* (1992), 256 Mont. 32, 36-37, 844 P.2d 97, we articulated a two-part test to determine whether a statute violates this constitutional preclusion. The first prong of this test focuses on whether the law is retrospective. A law is retrospective if it changes the legal consequences of actions committed before its effective date. The second prong of the test requires that the law at issue must be more onerous than the prior law. *Leistiko*, 256 Mont. at 36-37, 844 P.2d 97, 100 (citations omitted).

4. ¶We conclude that both prongs of the *Leistiko* test are met in the case at bar. Here, the transfer provision found in § 41-5-208, MCA, is retrospective because it was not in effect when Young committed any of the offenses charged in DJ-95-03 or DJ-95-31. And, as to the second prong of the test, § 41-5-208, MCA, is more onerous than the prior law because this statute changed the legal consequences to Young by allowing the Youth Court to extend his time of supervision on probation for an additional six years--i.e. from age 19 to 25--by transfer to adult court. Additionally, under § 41-5-208(4), MCA, Young faced the possibility of additional punishment in that a youth whose case is transferred to the District Court, on violation of the conditions of disposition, may face a jail term and other conditions as specified in §§ 46-18-201 through -203, MCA.

5. ¶While we appreciate the court's frustration in Young's failure to pay the restitution he was ordered, application of the transfer provisions of § 41-5-208, MCA, did not provide a lawful mechanism to rectify this problem. We hold that the Youth Court erred in its determination to apply this statute to Young's cases.

6. ¶Since the Youth Court committed Young to the DOC until age 19 on the condition that he complete the residential treatment program in Utah, and inasmuch as Young completed that program and is now 20 years old, Young's cases should be closed.

7. ¶Reversed and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART