No. 02-575

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 141

PAUL WRIGHT,

      Petitioner and Appellant,

    v.

MIKE MAHONEY, Warden, Montana
State Prison; BILL SLAUGHTER, Director,
Department of Corrections; and CONTRACT
PLACEMENT BUREAU,

      Respondents and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 2002-586,
                    Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Paul Wright, Pro Se, Shelby, Montana

      For Respondents:

          Honorable Mike McGrath, Attorney General, Helena, Montana

          Colleen Graham White, Department of Corrections, Helena, Montana

Submitted on Briefs:  February 27, 2003

Decided:   May 19, 2003

Filed:

_____
                          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Appellant Paul Wright (Wright) appeals the District Court's order denying his motion for a writ of prohibition.  We affirm.

¶2     The sole issue on appeal is: Did the District Court err in refusing to issue a writ to prohibit the Department of Corrections from transferring Wright from the Montana State Prison in Deer Lodge, Montana, to another correctional facility?

Factual and Procedural Background

¶3     On June 11, 1996, the Thirteenth Judicial District Court convicted Wright of deliberate homicide and use of a firearm.  The sentencing court ordered that Wright "be punished by imprisonment in the Montana State Prison at Deer Lodge, Montana, for the term of seventy five (75) years."  The court sentenced Wright to an additional five years for using a firearm during the crime and declared that he be ineligible for parole, placement in any supervised release program, or for placement in any program or facility besides the Montana State Prison (MSP) for the first twenty years of the sentence.  After the conviction, Wright was transferred to MSP in Deer Lodge, Montana.  Since then, the Department of Corrections (DOC) has placed Wright at various institutions, including out-of-state correctional facilities and in-state regional detention and private correctional centers.

¶4     Wright filed a writ for prohibition with the Thirteenth Judicial District Court in order to prevent the DOC from housing him in any correctional facility other than MSP.  The District Court declined to issue a writ of prohibition. Wright appeals the District Court's decision.

2

¶5    When this Court reviews a district court's conclusions of law regarding the application of a statute, our standard of review is "whether the tribunal's interpretation of the law is correct." *State v. McNally*, 2002 MT 160, ¶ 5, 310 Mont. 396, ¶ 5, 50 P.3d 1080, ¶ 5; *State v. Peplow,* 2001 MT 253, ¶ 17, 307 Mont. 172, ¶ 17, 36 P.3d 922, ¶ 17 (citations omitted). *See also, State v. Anderson,* 2001 MT 188, ¶ 19, 306 Mont. 243, ¶ 19, 32 P.3d 750, ¶ 19 (stating that our standard of review is plenary when reviewing a district court's conclusions of law, and that we must determine whether the conclusions are correct as a matter of law).

## Discussion

¶6    Wright argues that, by the terms of his written judgment, the statutory definition of "state prison" and by virtue of his liberty interest in not being transferred, the DOC does not have the authority to transfer him from the Montana State Prison at Deer Lodge, Montana. First, Wright contends that the plain language of the District Court's "Judgment and Commitment" mandates his placement in MSP for the first twenty years of his sentence. In support of this proposition, Wright directs us to the language of the judgment where the District Court ordered that Wright be "punished by imprisonment in the Montana State Prison at Deer Lodge, Montana," and "[in]eligible for parole, placement in any supervised release program or for placement in any program or facility besides Montana State Prison for the first twenty (20) years . . . ." Furthermore, Wright submits that he may not be imprisoned anywhere other than at the prison located in Deer Lodge for at least the first

3

twenty years of his sentence because § 53-30-101, MCA (1995), in effect at the time of his sentencing, designated "[t]he institution at Deer Lodge [a]s the state prison . . . ." It is important to note that, at the time of Wright's sentencing in 1996, the facility in Deer Lodge was the only adult male correctional facility in Montana. Although Wright recognizes that the statutory denomination of "state prison" has since been expanded to now include the Montana state prison, the Montana women's prison, a detention center in another jurisdiction detaining inmates from Montana pursuant to § 50-30-106, MCA, and a private correctional facility (*see* § 53-30-101, MCA (2001)), he insists that any application of the amended statute to his sentence is unconstitutionally *ex post facto*.

¶7     Article I, Section 10 of the United States Constitution prevents state legislatures from enacting *ex post facto* legislation. Article II, Section 31 of the Montana Constitution prohibits the same. *See State v. Leistiko* (1992), 256 Mont. 32, 36, 844 P.2d 97, 99. The constitutional prohibition against *ex post facto* laws is concerned with laws that retroactively make innocent action criminal, enlarge the definition of crimes or increase the punishment for criminal acts. *See California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 594. The Montana Code states: "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA. This Court uses the two-part *Leistiko* test to determine whether a statute violates the ban on *ex post facto* laws: (1) the law must be retrospective, and (2) it must disadvantage the offender affected by it. *State v. Duffy,* 2000 MT 186, ¶ 29, 300 Mont. 381, ¶ 29, 6 P.3d 453, ¶ 29 (citing *Leistiko*, 256 Mont. at 36-37, 844 P.2d at 100). However, changes in

4

procedure which do not affect substantial rights do not implicate the prohibition against *ex post facto* laws. *State v. Goebel,* 2001 MT 155, ¶ 28, 306 Mont. 83, ¶ 28, 31 P.3d 340, ¶ 28. Therefore, this Court will apply the above-mentioned test only if Wright's substantial rights are implicated by the application of the amended statute.

¶8      Wright asserts that the application of the amended definition violates both his constitutional due process right to liberty and his state-created liberty interest. We first turn to Wright's argument regarding his constitutional liberty interest. While the Fourteenth Amendment of the United States Constitution prohibits a state from depriving a person of life, liberty, or property without due process of law, it is nevertheless well-settled that:

> [G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution . . . . The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

*Meachum v. Fano* (1975), 427 U.S. 215, 224-25, 96 S. Ct. 2532, 2538 , 49 L.Ed.2d 451, 458-59. Additionally, "[j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." *Olim v. Wakinekona* (1983), 461 U.S. 238, 245, 103 S.Ct. 1741,1745, 75 L.Ed.2d 813, 820. Clearly, Wright does not have a constitutional right to be imprisoned in any particular facility.

¶9     Nevertheless, Wright maintains that even if he does not have a federal constitutional due process right to be imprisoned in a particular correctional facility, he does have a state-created liberty interest in not being transferred from MSP. Wright submits that Montana laws in effect at the time of his sentencing created this liberty interest. In order for a state to create a liberty interest, it must first enact a law that establishes a "right of real substance;" however, even then statutorily-defined liberty interests are restricted to freedom from "atypical and significant hardships in relation to the ordinary incidents of prison life" or restraints which "inevitably affect[] the duration of the prisoner's confinement." *McDermott v. Montana Dept. of Corrections*, 2001 MT 134, ¶ 11, 305 Mont. 462, ¶ 11, 29 P.3d 992, ¶ 11.

¶10    Other than § 53-30-101, MCA (1995), Wright does not list which Montana laws in effect at the time of his sentencing established a "right of real substance." However, even if this Court determined that the 1995 definition of "state prison" did confer a right of real substance, this right is restricted to freedom from "atypical and significant hardships in relation to the ordinary incidents of prison life" or restraints which "inevitably affect[] the duration of the prisoner's confinement." *McDermott,* ¶ 11. Being transferred from one prison to another, even out of state, is neither an "atypical and significant" hardship in relation to the ordinary incidents of prison life, nor does it "inevitably affect the duration" of Wright's confinement.

¶11    For example, in *Olim v. Wakinekona* (1983), 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813, a Hawaii prisoner, who had been transferred to a prison in California, claimed

that the transfer violated his state-created right to be imprisoned in Hawaii. The prisoner argued that Hawaii's prison regulations had created a liberty interest and a corresponding due process right. In concluding that Hawaii had not created such a liberty interest, the United States Supreme Court asserted that a State does not create a constitutionally protected liberty interest unless it has "conferred [a] right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct." *Wakinekona*, 461 U.S. at 248-49, 103 S.Ct. at 1747, 75 L. Ed. 2d at 822 (quoting *Meachum*, 427 U.S. at 226, 96 S.Ct. at 2539, 49 L.Ed.2d at 460). We conclude that Wright has not persuasively shown that Montana laws in effect at the time of his sentencing "conferred [a] right on the prisoner to remain in the prison in which he was initially assigned, defeasible only upon proof of specific acts of misconduct." Like Hawaii in *Wakinekona,* Montana retains the discretion to transfer a prisoner for whatever reason or no reason at all; the laws in effect at the time of Wright's sentencing did not impose conditions on its discretionary power to transfer prisoners. Like the prisoner in *Wakinekona*, Wright does not have a state-created liberty interest in not being transferred to or from any correctional facility.

¶12    Therefore, because none of Wright's substantial rights are implicated by his being housed at a correctional facility other than the prison in Deer Lodge, we need not apply the two-pronged *Leistiko* test. However, even if this Court did apply this test, Wright would fail its second prong because the amended statute neither alters the definition of a crime nor increases the punishment. *State v. Duffy*, 2000 MT 186, ¶ 31, 300 Mont. 381, ¶ 31, 6 P.3d 453, ¶ 31. Here, as in *Duffy*, "[t]he conduct of which [the defendant] was accused was illegal

and punishable both before and after" the amendment. Moreover, the District Court's design in declaring that Wright be "[in]eligible for parole, placement in any supervised release program or for placement in any program or facility besides Montana State Prison for the first twenty years," was to ensure that Wright would serve at least twenty years in prison, not to confer to Wright a special privilege to serve in any particular prison.

¶13   The facts presented in this case are similar to those in *California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588.   At issue in *Morales* was a statute that had amended parole procedures to allow the Board of Prison Terms to decrease frequency of parole suitability hearings under certain circumstances.  Like Wright, the defendant in *Morales* contended that the application of the amended parole procedures to his prison sentence violated the *ex post facto* clause because he had been convicted prior to the amendment.  The Ninth Circuit Court of Appeals agreed with the defendant.  The United States Supreme Court, however, granted *certiorari* and reversed the Circuit Court's decision.  The Court based the reversal on its application of a version of the *Leistiko* test and its determination that the amended parole procedures did not "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Morales*, 514 U.S. at 504, 115 S.Ct. at 1601, 131 L.Ed.2d at 594 (citations omitted).  The Supreme Court also noted that under Morales' expansive view, the Clause would forbid any legislative change that has any conceivable risk of affecting a prisoner's punishment. *Morales,* 514 U.S. at 508, 115 S.Ct. at 1602-03, 131 L.Ed.2d at 596.  Here, Wright's expansive view would similarly

preclude any legislative change that would have any possible chance of affecting a prisoner's punishment, as well as frustrate the DOC's efforts to prevent overcrowding at its facilities.

¶14 Lastly, in his opening brief, Wright asserts that the application of the amended definition of "state prison" violates his Equal Protection rights; however, Wright failed to make an equal protection argument to the District Court in his petition for a writ of prohibition. Given that "it is fundamentally unfair to fault the . . . court for failing to rule correctly on an issue it was never given the opportunity to consider," and that "[t]he general rule is that this Court will not address an issue raised for the first time on appeal," we decline to address this argument. *Montana Fair Housing, Inc. v. Barnes*, 2002 MT 353, ¶ 24, 313 Mont. 409, ¶ 24, 61 P.3d 170, ¶ 24 (quoting *Day v. Payne* (1996), 280 Mont. 273, 276-77, 929 P.2d 864, 866).

¶15 Therefore, in consideration of the foregoing, chiefly that Wright has neither a federal nor a state constitutional liberty interest in being housed exclusively in the state prison located in Deer Lodge, Montana, we conclude that the DOC has the authority to transfer Wright from that facility. Accordingly, we affirm the District Court's ruling.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER
/S/ JIM RICE
/S/ KENNETH R. NEILL
Honorable Kenneth R. Neill, District
Judge, sitting for former Justice Terry N.
Trieweiler

Justice James C. Nelson dissents.

¶16 The trial court's sentencing order in this case is absolutely clear. Wright was to be "punished by imprisonment in the Montana State Prison at Deer Lodge, Montana, for the term of SEVENTY-FIVE (75) YEARS." As the majority concedes, in June of 1996, at the time Wright was sentenced--and at the time he committed his crime on or about August 7, 1995-- there was no other adult male correctional facility other than the Montana State Prison at Deer Lodge, and that is where the District Court ordered Wright to serve his sentence.

¶17 The governing law is equally clear. The law in effect at the time of the commission of the crime controls as to the possible sentence. *State v. Azure* (1978), 179 Mont. 281, 282, 587 P.2d 1297, 1298; *State v. Stevens* (1995), 273 Mont. 452, 455, 904 P.2d 590, 592; *State v. Brister*, 2002 MT 13, ¶ 26, 308 Mont. 154, ¶ 26, 41 P.3d 314, ¶ 26.

¶18 For these reasons, Wright must serve his sentence at the Montana State Prison at Deer Lodge. That is what the District Court ordered, and the law in effect at the time Wright committed his crime and was sentenced required that Wright be incarcerated at the Montana State Prison. Accordingly, the Department of Corrections has no authority under the trial court's sentencing order and under our jurisprudence to remove Wright from the Montana State Prison to some other correctional facility.

¶19 I disagree with the majority's analysis and the decision. The discussion and analysis are irrelevant, given the trial court's sentencing order and our case law requiring application

of the law in effect in August 1995.  The Court's decision ignores both and, as a consequence, we reach the wrong result.

¶20    I would reverse and order the trial court to grant the writ of prohibition.  I dissent from our refusal to do so.

/S/ JAMES C. NELSON

Chief Justice Karla M. Gray and Justice Patricia O. Cotter join in the foregoing dissent.

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER