No. 02-020

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 275

STATE OF MONTANA,

      Plaintiff and Appellant,

   v.

ROBERT S. MOUNT,

      Defendant and Respondent.


APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and for the County of Missoula, Cause No. DC 2000-255
                  The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           Mike McGrath, Montana Attorney General, Ali Sheppard, Assistant Montana Attorney General (argued), Helena, Montana; Fred VanValkenburg, Missoula County Attorney, Dale Mrkich, Deputy Missoula County Attorney, Missoula, Montana

      For Respondent:

           William Boggs, Missoula, Montana (argued)


                         Argued:  October 17, 2002
                      Submitted:  March 13, 2003
                      Decided:  October 7, 2003

Filed:


                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The State of Montana (State) appeals the judgment entered by the Fourth Judicial District Court, Missoula County, granting Robert S. Mount's (Mount) motion to dismiss the charge of failing to register as a sex offender. We reverse and order the District Court to reinstate the charge.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err in finding that the registration and disclosure requirements of the Sexual or Violent Offender Registration Act constituted punishment for purposes of the *ex post facto* clause of the United States and Montana Constitutions?

¶4 2. Do the registration and disclosure requirements of the Sexual or Violent Offender Registration Act deprive offenders of any "rights" within Article II, Section 28, of the Montana Constitution, or § 46-18-801, MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 In 1989, Montana enacted the Sexual Offender Registration Act. Referred to popularly as Megan's Law, the Sexual Offender Registration Act mandates that convicted sex offenders register as sex offenders in their communities, at which time their communities are notified of the offenders' presence.

¶6 Since its enactment, the Montana Legislature (Legislature) has twice amended the Sexual Offender Registration Act. The effective date of the first amendment was October 1, 1995. The effective date of the second amendment was October 1, 1997.

¶7 In 1995, the Legislature amended the title of the Sexual Offender Registration Act to the Sexual or Violent Offender Registration Act (the Act). The Legislature also amended

2

the Act to include "or violent" after every instance where the word "sexual" occurred in the Act. Further, the Legislature set out specific registration and disclosure requirements to which an offender must adhere upon release. Neither the Act, nor the 1995 amendments contained retroactive provisions.

¶8 In 1997, the Legislature again amended the Act to make its registration and disclosure requirements retroactive to "sexual offenders who are sentenced or who are in the custody or under the supervision of the department of corrections on or after July 1, 1989."

¶9 On October 24, 1984, Mount was convicted of sexual intercourse without consent, a felony offense. He was sentenced to the Montana State Prison for 20 years.

¶10 On May 10, 1996, Mount received a final discharge from the Montana State Prison, and on May 19, 1996, he registered as a sex offender in Missoula County.

¶11 On June 16, 2000, Mount was charged with failing to register as a sex offender under § 46-23-507, MCA. The charge arose from Mount's admissions that he had not updated his registration since May 19, 1996, when he initially registered. Specifically, § 46-23-507, MCA, states: "[a] sexual or violent offender who knowingly fails to register, verify registration, or keep registration current . . . may be sentenced to a term of imprisonment of not more than 5 years or may be fined not more than $10,000, or both."

¶12 On October 17, 2001, Mount moved for dismissal of the charge of failing to register as a sex offender. The District Court granted his motion on November 14, 2001. The District Court found that the Act, as applied to Mount, was *ex post facto* because it subjected him to enhanced punishment based on his prior conviction. Such enhanced punishment, the

3

District Court concluded, was in violation of the constitutional prohibition against *ex post facto* laws.

¶13 The State now appeals the District Court's judgment.

¶14 Additional facts will be discussed where they become applicable in the following analysis.

## STANDARD OF REVIEW

¶15 In criminal cases, we review a District Court's grant or denial of a motion to dismiss *de novo* as a question of law. *State v. Beanblossom*, 2002 MT 351, ¶ 9, 313 Mont. 394, ¶ 9, 61 P.3d 165, ¶ 9.

## DISCUSSION

### A. *EX POST FACTO* JURISPRUDENCE

¶16 We begin by setting out the historical development of *ex post facto* jurisprudence in Montana, and we then clarify the test to be applied henceforth.

¶17 The *ex post facto* clause is found at Article II, Section 31 of the 1972 Montana Constitution. This clause states: "No ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be passed by the legislature." Art. II, Sec. 31, Mont. Const. This clause was derived from Article III, Section 11, of the 1889 Montana Constitution and in large measure parallels Article I, Section 10, of the United States Constitution. LARRY M. ELISON & FRITZ SNYDER, THE MONTANA STATE CONSTITUTION 83 (G. Alan Tarr series ed., Greenwood Press) (2001).

4

¶18     We have applied Montana's *ex post facto* clause in a number of cases. In so doing, we have adopted one test in criminal cases and another in civil cases.

¶19     As to criminal cases, three slightly different tests and analyses have emerged over time. In *State v. Ellsworth* (1963), 142 Mont. 14, 380 P.2d 886, we adopted the test set forth by the United State Supreme Court in *Calder v. Bull* (1798), 3 U.S. 386, 1 L.Ed 648. This test defined *ex post facto* legislation as:

> [1] every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; or
> [2] every law that aggravates a crime, or makes it greater than it was, when committed; or
> [3] every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

*Ellsworth*, 142 Mont. at 19, 380 P.2d at 888 (quoting *Calder*, 3 U.S. at 390).

¶20     We followed the *Ellsworth* test for several years. *See State v. Maldonado* (1978), 176 Mont. 322, 328, 578 P.2d 296, 300; *State v. Gone* (1978), 179 Mont. 271, 280, 587 P.2d 1291, 1297; *State v. Azure* (1978), 179 Mont. 281, 282, 587 P.2d 1297, 1298; *State v. Coleman* (1979), 185 Mont. 299, 314, 605 P.2d 1000, 1010, *cert denied*, 446 U.S. 970, 100 S.Ct. 2952, 64 L.Ed.2d 831; *State v. Beachman* (1980), 189 Mont. 400, 406, 616 P.2d 337, 340-41; *State v. Hall* (1986), 224 Mont. 187, 189, 728 P.2d 1339, 1340, *rev'd on other grounds by* 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354.

¶21     However, in 1992, without stating any particular rationale, we adopted a second version of the *ex post facto* test in *State v. Leistiko* (1992), 256 Mont. 32, 844 P.2d 97. This version was adopted from *Miller v. Florida* (1987), 482 U.S. 423, 430, 107 S.Ct. 2446,

5

2451, 96 L.Ed.2d 351, and specifically stated that a law was *ex post facto* if it: (1) was retrospective; and (2) disadvantaged the offender affected by it. *Leistiko*, 256 Mont. at 36-37, 844 P.2d at 100 (holding that an increase in the amount of restitution owed, based on recent parole violations, violated the *ex post facto* clause).

¶22 We continued to apply the *Leistiko* test for four years. Then, in 1996, we adopted a third version in *Frazier v. Montana State Dept. of Corrections* (1996), 277 Mont. 82, 920 P.2d 93. The *Frazier* test looked to both the intent and the effect of the law at issue. *Frazier*, 277 Mont. at 85-87, 920 P.2d at 95-97 (holding that the intent of an administrative supervision fee is nonpunitive and the effect of the law is to require monetary assistance from Frazier). In *Frazier*, we stated that *Leistiko* was inapplicable on the facts, as *Frazier* dealt with a civil sanction. In this regard, we noted that "[a] civil sanction will implicate *ex post facto* concerns only if it can be fairly characterized a punishment." *Frazier*, 277 Mont at 85, 920 P.2d at 95 (citing *Bae v. Shalala* (7th Cir. 1995), 44 F.3d 489, 492).

¶23 Notwithstanding our adoption of the *Frazier* test, we continued, for the most part, to apply the *Leistiko* test in criminal contexts. *See State v. Suiste* (1993), 261 Mont. 251, 253, 862 P.2d 399, 401*; State v. Brander* (1996), 280 Mont. 148, 153, 930 P.2d 31, 35; *Matter of Brogan* (1997), 283 Mont. 413, 422, 942 P.2d 100, 106; *State v. Beckman* (1997), 284 Mont. 459, 463, 944 P.2d 756, 759; *State v. Cooney* (1997), 284 Mont. 500, 505, 945 P.2d 891, 893-94; *In re Young*, 1999 MT 195, ¶ 14, 295 Mont. 394, ¶ 14, 983 P.2d 985, ¶ 14; *State v. Duffy*, 2000 MT 186, ¶ 29, 300 Mont. 381, ¶ 29, 6 P.3d 453, ¶ 29; *State v. Goebel*, 2001 MT 155, ¶ 28, 306 Mont. 83, ¶ 28, 31 P.3d 340, ¶ 28; *Wright v. Mahoney*, 2003 MT

6

141, ¶ 7, 316 Mont. 173, ¶ 7, 71 P.3d 1195, ¶ 7.

¶24     However, in 1997, we again reformulated the *ex post facto* test for criminal matters. As revised, this test states that a law is *ex post facto* if it:

[1] punishes as a crime an act which was not unlawful when committed;
[2] makes punishment for a crime more burdensome; or
[3] deprives [a] person charged with a crime of any defense available under the law at the time the act was committed.

*See Langford v. State* (1997), 287 Mont. 107, 114, 951 P.2d 1357, 1361; *Kills on Top v. State*, 2000 MT 340, ¶ 65, 303 Mont. 164, ¶ 65, 15 P.3d 422, ¶ 65.

¶25     Given that this test is more comprehensive and is in line with the progression of our *ex post facto* jurisprudence, we take this opportunity to clarify that henceforth, the test, as set forth in *Langford*, shall be used in analyzing *ex post facto* challenges in criminal contexts.

¶26     That said, and for reasons which will become apparent in our further discussion, in analyzing *ex post facto* challenges in civil sanction contexts, we will henceforth apply an intents-effects test. Our articulation and application of that test here, though, follows current federal case law and is more comprehensive than was the test stated in *Frazier*.

¶27     With that introduction, we next turn to the Act itself.

## B. THE ACT

¶28     As noted, the Act was adopted in 1989, and this law is codified in the code of criminal procedure. *See* §§ 46-23-501 to 520, MCA. Among other things, the Act requires offenders to register in-person with the local law enforcement agency in their communities.

Sections 46-23-504(1) and (2), MCA (2001). During this initial registration, offenders must provide the local law enforcement agency with their addresses, photographs and fingerprints. Section 46-23-504(3), MCA (2001). After this initial registration, offenders must then update their addresses by mail according to the time-frames applicable to their level designations--i.e., level one and level two offenders must update their registration information once a year and level three offenders, every 90 days. Section 46-23-504(4), MCA (2001).

¶29     Under the Act, the duration of the registration requirement depends on an offender's classification--i.e., sex offenders must register for the rest of their lives. Section 46-23-506(1), MCA (2001). However, both sex and violent offenders may petition a court for relief of the registration requirement after ten years of registration compliance. Section 46-23-506(3), MCA (2001). Finally, as noted above, the Act contains a retroactivity clause for both sex and violent offenders. Section 46-23-501, MCA, Compiler's Comments.

¶30     As previously stated, Mount contends that the Act violates the *ex post facto* clause of the United States and Montana Constitutions. That challenge brings us to the recent United States Supreme Court (Supreme Court) case, *Smith v. Doe* (2003), ___ U.S. ___, 123 S.Ct. 1140, 155 L.Ed.2d 164. *Smith* dealt with an *ex post facto* challenge to a sexual offender registration act similar to Montana's act. Specifically, the Supreme Court in *Smith* addressed whether Alaska's Sexual Offender Registration Act (Alaska's Act) violated the federal *ex post facto* clause. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1145.

¶31     Both respondents in *Smith* pled *nolo contendre* to sexual abuse charges and served

8

and completed their respective sentences and rehabilitative programs. However, Alaska's Act contained a retroactivity provision which made the requirements of Alaska's Act applicable to them, with the result that, after completing their respective sentences and rehabilitative programs, both respondents were required to register as sex offenders under Alaska's Act. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1145-46. The respondents were also required to submit quarterly verifications to the appropriate authorities, and to notify the authorities of any changes to their initial registration forms. Both respondents argued Alaska's Act violated the federal *ex post facto* clause. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1146.

¶32    The Supreme Court, however, rejected this challenge and held that Alaska's Act did not violate the *ex post facto* clause. Important to our analysis here, the Supreme Court utilized an intents-effects test in disposing of the case. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1146-47, 1154. It is to the Supreme Court's articulation of that test we now turn.

## C. THE TEST

¶33    As a first step, the Supreme Court determined the intent of the law at issue. In so doing, it analyzed: (1) the declared purpose of the law and (2) the structure of the law. In this part of its analysis, the Supreme Court stated that if the declared purpose of the law, or the structure of the law, or the declared purpose *and* the structure of the law is punitive, the analysis ends, for at that point the law meets the very definition of *ex post facto*. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1146-47. This parallels the test we used in *Frazier*, 277 Mont. at 86, 920 P.2d at 96.

¶34     The Supreme Court went on to note, however, that if both the declared purpose and the structure of the law are nonpunitive, then the intent of the law is to enact a civil regulatory scheme. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1147. From that point, the Supreme Court's analysis proceeded to determine the effect of the law. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1147.

¶35     In determining the effect of the law, the Supreme Court applied various factors from *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644. These seven non-exclusive factors or guides include: (1) whether the law imposes an affirmative restraint or disability; (2) the historical treatment of the law; (3) a finding of scienter; (4) whether the law was traditionally aimed at punishment; (5) whether the law applies to criminal behavior; (6) whether the law has a nonpunitive purpose; and (7) the excessiveness of the law in application. *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68.

¶36     Under the Supreme Court's analysis, if, in totality, these factors result in the effect of the law being nonpunitive, then, combined with the nonpunitive intent of the law, the law will not be held to violate the *ex post facto* clause. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1154.

¶37     As noted, we adopted an intents-effects test in *Frazier*, 277 Mont. at 85-88, 920 P.2d at 95-97. However, since the intents-effects test articulated in *Smith* includes a more comprehensive discussion of both the "intents" and "effects" prongs of the test, we shall, henceforth use the *Smith* test, including the *Mendoza-Martinez* factors delineated above, in analyzing *ex post facto* challenges involving civil sanctions and regulatory schemes,

including the one at bar.

## ISSUE 1.

¶38 **Did the District Court err in finding that the registration and disclosure requirements of the Act constituted punishment for purposes of the** *ex post facto* **clause of the United States and Montana Constitutions?**

¶39 Using the *Smith* analysis, the State argues that the Act is regulatory and nonpunitive in nature, and that application of the *Mendoza-Martinez* factors further clarifies the Act's nonpunitive purpose.

¶40 Mount argues that the *Leistiko* test is applicable because the Act "disadvantages" him by subjecting him to a "grievous social stigma," thereby offending his constitutional right against *ex post facto* legislation. Mount also argues that application of the *Mendoza-Martinez* factors further proves the State's prosecution of him is in violation of the *ex post facto* clause.

¶41 We agree with the State and address both parties' arguments within the context of the intents-effects test articulated in *Smith*.

## I. INTENTS

¶42 We first determine the intent of the law, and in so doing, we analyze both the declared purpose of the law and the structure of the law. Again, if both the declared purpose of the law and the structure of the law are nonpunitive, then the intent of the law is also nonpunitive. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1146-47.

**A.     Declared Purpose**

¶43 At the outset, it is appropriate that we set out some guiding principles in determining

11

the law's declared purpose. Considerable deference is given to legislative intent, *Smith*, \_\_\_ U.S. at \_\_\_, 123 S.Ct. at 1147, and we will override legislative intent only upon a showing of the clearest proof, *Hudson v. United States* (1997), 522 U.S. 93, 100, 118 S.Ct. 488, 493, 139 L.Ed.2d 450. In determining legislative intent, we consider the legislature's declared purpose as well as the structure of the law at issue. *Flemming v. Nestor* (1960), 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435. Further, regarding the law's declared purpose, we must determine whether the legislature either explicitly or impliedly intended the law to be civil or criminal in nature. *Hudson*, 522 U.S. at 99, 118 S.Ct. at 493. Imposition of restrictive measures to further a law's declared purpose has been held to be "a legitimate nonpunitive governmental objective." *Kansas v. Hendricks* (1997), 521 U.S. 346, 363, 117 S.Ct. 2072, 2083, 138 L.Ed.2d 501 (statute set forth civil commitment procedures for long-term care of sexually violent predators). Thus, where a legislative restriction exists which falls under the State's power to protect the health and safety of its citizens, the legislative restriction will be construed as evidencing a regulatory and not a punitive power. *Hawker v. New York* (1898), 170 U.S. 189, 192-95, 18 S.Ct. 573, 575, 42 L.Ed. 1002.

¶44 Here, the Act does not contain a declared purpose as such. However, the preamble to the Act lists several legislative concerns which prompted adoption of the Act's provisions. These concerns include: (1) the danger of recidivism and protection of the public; (2) the impairment of law enforcement efforts from lack of information; (3) the prevention of victimization and prompt resolution of sexual or violent offenses; (4) the offender's reduced expectation of privacy because of the public's interest in safety; and (5) the protection of

12

specific vulnerable groups and the public in general. *See* Compiler's Comments to Title 46, Chapter 23, Part 5, Montana Code Annotated.

¶45     These concerns are strikingly similar to the declared purpose of Alaska's Act. *Smith,* \_\_\_ U.S. at \_\_\_, 123 S.Ct. at 1147. Furthermore, like the statute in *Hendricks*, nothing on the face of the Act indicates that it is anything other than a civil regulatory scheme intended to protect the public. *Hendricks*, 521 U.S. at 361, 117 S.Ct. at 2082. The protection of the public from recidivism is of "paramount concern to the government and the people" of Montana. *See* Preamble to Title 46, Chapter 23, Part 5, Montana Code Annotated. As in *Hawker*, the Act's registration and disclosure requirements evidence that these are regulatory in nature. Hence, we conclude that the declared purpose of the Act--that of protecting the public--is nonpunitive for purposes of the first prong of our "intents" analysis.

**B.     Structure**

¶46     As part of our "intents" analysis, we must also determine whether the structure of the Act is nonpunitive. While the manner of codification of the enforcement provisions of a law are probative of the legislature's intent, *Hendricks*, 521 U.S. at 361, 117 S.Ct. at 2082, the location and labels assigned to a statutory provision do not, by themselves, transform a civil remedy into a criminal one, or vice versa, *Smith*, \_\_\_ U.S. at \_\_\_, 123 S.Ct. at 1148.

¶47     Here, the Act is codified in Montana's code of criminal procedure, Title 46, Chapter 23, Part 5, Montana Code Annotated. However, in *Doe I v. Otte* (9th Cir. 2001), 259 F.3d 979, 986, *rev'd by Smith*, \_\_\_ U.S. at \_\_\_, 123 S.Ct. at 1140, the Ninth Circuit deferred its analysis of the structure of the law there at issue, given that the purpose of the law was so

13

clear. This approach was affirmed by the Supreme Court in *Smith*, ___ U.S. at ___, 123 S.Ct. at 1149.

¶48     We take the same approach. Since, as we have already stated, the declared purpose of the Act is clearly nonpunitive, we conclude that the fact that the Act is codified in the code of criminal procedure does not, in and of itself, transform the Act's nonpunitive, civil regulatory scheme into a criminal one.

¶49     We hold, therefore, that the legislative intent of the Act is nonpunitive. That being the case, we next proceed to the "effects" prong of our test.

## II.  EFFECTS

¶50     As previously stated, the second step in our analysis is to determine the effect of the law, and in so doing, we apply the seven *Mendoza-Martinez* factors articulated in *Smith*, ___ U.S. at ___, 123 S.Ct. at 1149. Again, these factors include: (1) whether the law imposes an affirmative restraint or disability; (2) the historical treatment of the law; (3) a finding of scienter; (4) whether the law was traditionally aimed at punishment; (5) whether the law applies to criminal behavior; (6) whether the law has a nonpunitive purpose; and (7) the excessiveness of the law in application. *Mendoza-Martinez*, 372 U.S. at 168-69, 83 S.Ct. at 567-68. If, in totality, the factors are nonpunitive, then the effect of the law is also nonpunitive. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1154. We will address each of these factors in turn.

## A.     Affirmative Restraint or Disability

¶51     The first of the *Mendoza-Martinez* factors considers whether the Act imposes an

14

affirmative restraint or disability.

¶52 The State argues that the registration and disclosure requirements of the Act establish a regulatory scheme, which is consistent with the purpose of the Act in protecting the public.

¶53 Mount argues that the renewal requirement of the Act and the unlimited access by the public to the registration information via the Internet proves that the Act imposes an affirmative restraint or disability.

¶54 We agree with the State. As the Supreme Court in *Smith* noted, the more minor and indirect the restraint or disability, the more likely such restraint or disability is nonpunitive. *Smith*, ___ U.S. at ___, 123 S.Ct. at 1151.

¶55 The Act requires Mount to register in person initially at his local law enforcement agency, at which time he is also photographed and fingerprinted. Sections 46-23-504(2) and 504(3), MCA (2001). However, after this initial registration, Mount can choose to verify his address by mail once a year. Section 46-23-504(4), MCA (2001). Mount may live anywhere he desires, his only obligation being that if he moves, he must notify his local law enforcement agency of his change of address within ten days. Section 46-23-505, MCA. Under the Act, Mount must keep his registration current for life. Section 46-23-506(1), MCA (2001). Failure to do so will subject him, as it did here, to criminal prosecution. Section 46-23-507, MCA. However, a court may vacate this requirement upon receiving and ultimately granting a petition for an order relieving him of the requirements after ten years have passed. Section 46-23-506(3), MCA (2001).

¶56　We conclude that these requirements impose an indirect restraint on Mount and are, therefore, more consistent with a regulatory scheme. Mount is only initially required to register in-person. Thereafter, he can update his registration information by mail. In addition, he can move wherever he desires and he can petition a court for an order relieving him of the registration requirement. The registration and disclosure requirements of the Act, therefore, do not impose an affirmative restraint or disability on Mount.

**B.　Historical Treatment**

¶57　The second *Mendoza-Martinez* factor addresses the historical treatment regarding the types of requirements imposed under the Act.

¶58　The State argues that the registration and disclosure requirements of the Act do not incarcerate, incapacitate, or inhibit Mount's freedom of movement. As such, the State argues that the Act's requirements do not impose traditional forms of punishment.

¶59　Mount argues that the registration and disclosure requirements of the Act are analogous to historical shaming punishments, especially since the Internet makes his information readily available.

¶60　Again, we agree with the State. The registration and disclosure requirements of the Act cannot be likened to historical shaming punishments. The primary purpose of the registration and disclosure requirements of the Act are not to shame or embarrass the registrant, but rather, to provide parents with information necessary to protect themselves and their vulnerable children and to provide law enforcement with information necessary to track a class of offenders who have a high propensity for recidivism. Historically

16

punishments were of a physical nature--whipping, branding, incarceration.   While the registrant may incidentally suffer humiliation as a result of having to register and disclose his whereabouts under the Act, this is not physical punishment.  *Smith*, ___ U.S. at ___, 123 S.Ct. at 1150.

¶61    Mount nonetheless argues that the registration and disclosure requirements effectively "shame" him since his information is readily accessible via the Internet.  We disagree.

¶62    The Supreme Court in *Smith* addressed this same argument.  The Supreme Court held that the stigma that flows from registering as a sex offender is not from public shaming.  Rather, the stigma flows from dissemination of accurate information which is already public for the most part.  The Supreme Court noted that the "State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme."  *Smith*, ___ U.S. at ___, 123 S.Ct. at 1150.  Additionally, "[w]idespread public access is necessary for the efficacy of the [regulatory] scheme [of the Act] . . . ."  *Smith*, ___ U.S. at ___, 123 S.Ct. at 1150.  We adopt this same rationale.

¶63    Any shame that Mount may experience results from his previous conviction, not from disclosure of that fact to the public.  Indeed, Mount's conviction and sentence is already a matter of public record. Furthermore, the availability of the information about Mount provides parents with the ability to protect themselves and their vulnerable children.  Moreover, protection from the recidivism of sex offenders is the Act's paramount purpose.  We conclude that the registration and disclosure requirements of the Act do not constitute historical shaming or punishment.

## C.     Finding of Scienter

¶64     The third *Mendoza-Martinez* factor addresses scienter.

¶65     The State argues that although the Act operates on antecedent events, that fact does not make it *ex post facto* under this factor.

¶66     Mount argues that the registration and disclosure requirements only apply to those convicted of a sexual offense.  Thus, Mount argues that the requirements are effective only upon a finding of scienter with regard to that underlying sexual offense.   We disagree.

¶67     We have previously held that "simply because a statute operates on events antecedent to its effective date does not make the statute *ex post facto* . . . ." *Brander*, 280 Mont. at 154, 930 P.2d at 35 (quoting *Coleman*, 185 Mont. at 314, 605 P.2d at 1010 (citations omitted)). Further, as the Ninth Circuit Court noted in *Russell v. Gregoire* (9th Cir. 1997), 124 F.3d 1079, 1089-90, *cert. denied*, *Stearns v. Gregoire*, 523 U.S. 1007, 118 S.Ct. 1191, 140 L.Ed.2d 321, "[i]t is hornbook law that no ex post facto problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed."   That is exactly the situation here.

¶68     Mount is charged with failing to register as a sex offender under § 46-23-507, MCA. Specifically, this statute states: "[a] sexual or violent offender who knowingly fails to register, verify registration, or keep registration current . . . may be sentenced to a term of imprisonment of not more than 5 years or may be fined not more than $10,000, or both." Section 46-23-507, MCA.   This charge is a separate offense from the previous charge and

18

conviction of sexual intercourse without consent and, though including the past offense as an element of the present one, Mount's conduct in failing to register clearly took place after the registration requirements were enacted.

¶69     Therefore, we conclude that this *Mendoza-Martinez* factor is not violated.

**D.     Traditional Aims of Punishment**

¶70     The fourth *Mendoza-Martinez* factor addresses traditional aims of punishment--i.e., retribution and deterrence.

¶71     The State argues that the Act's main purpose is protection of the public from the recidivism of sex offenders and not to inflict retribution on sex offenders.

¶72     Mount argues that the registration and disclosure requirements are punitive, namely because he must register for life.  We agree with the State.

¶73     While the more a statute promotes the traditional aims of retribution and deterrence, the more likely the statute is punitive,  a statute may  provide a measure of deterrence, and still qualify as nonpunitive.  *Smith*, ___ U.S. ___, 123 S.Ct. at 1152.  The registration and disclosure requirements of the Act may have an incidental deterrent effect,  since potential offenders may not want to register for life should they be convicted.   *Doe I*, 259 F.3d at 989-90.  This incidental effect, however, does not necessarily implicate punishment, as long as the law is reasonably related to the law's purpose.  *Smith*, ___ U.S. at ___, 123 S.Ct. at 1152.

¶74     Again, Mount is required initially to register in-person, after which he can update his registration information by mail.  He must do this for the rest of his life, but he also may

19

petition a court for an order relieving him of the registration requirement. These requirements, as we held above, establish a regulatory scheme. These requirements also further the Act's purpose of (1) protecting the public from the recidivism of sex offenders; (2) assisting law enforcement efforts in gathering information; and (3) preventing victimization and resolving sexual offenses. And, we have already stated that the intent of the Act is nonpunitive and that the Act's registration and disclosure requirements establish a regulatory scheme which furthers the purposes of the Act.

¶75    We conclude, therefore, that the registration and disclosure requirements are reasonably related to the Act's purposes. They do not promote retribution under this fourth *Mendoza-Martinez* factor.

**E.    Criminal Behavior**

¶76    The fifth *Mendoza-Martinez* factor addresses whether the Act applies to criminal behavior.

¶77    The State argues that the Act does not impose criminal sanctions for previous criminal conduct. Mount argues that the Act applies to criminal behavior because it imposes criminal sanctions only on individuals who have been convicted.

¶78    In *Russell*, the Ninth Circuit noted that the crime of failing to register was a separate offense. The Court in *Russell* also noted that a prior conviction for a sexual offense was an element to the offense of failing to register. However, that fact was "of no consequence," because the failing to register charge was, again, a separate offense. *Russell*, 124 F.3d at 1088.

¶79 Similarly, Mount was charged with the separate offense of failing to register as a sex offender, under § 46-23-507, MCA. Therefore, we hold that Mount is not being punished for past criminal conduct, but for his present offense.

## F. Nonpunitive Purpose

¶80 The sixth *Mendoza-Martinez* factor addresses whether the Act has a nonpunitive purpose. Mount conceded that a nonpunitive purpose for the Act existed. As already noted, the purpose of the Act is, among other things, protection of the public from the recidivism of sex offenders. We conclude, again, that under this factor, the Act has a nonpunitive purpose.

## G. Excessiveness

¶81 The seventh and final *Mendoza-Martinez* factor addresses whether application of the Act is excessive.

¶82 The State argues that the registration and disclosure requirements impose a minimal burden on Mount. The State also argues that the requirements are tailored to disclose only the information necessary to further the Act's purpose of protecting the public.

¶83 Mount argues that the registration and disclosure requirements are "exceedingly broad," providing the public with "almost unlimited public access to registration information."

¶84 Again, we agree with the State. The registration and disclosure requirements are tailored to disclose only necessary information and, as already noted, these requirements do not impose an excessive burden on the registrant.

¶85    Moreover, we note that under § 46-23-508, MCA, the names and addresses of registered sex or violent offenders are classified as public criminal justice information. Under the Act, law enforcement officials have discretion whether or not to release additional information about registered sex or violent offenders should these officials deem the additional information necessary to protect the public. Section 46-23-508(1), MCA.

¶86    In addressing this excessiveness factor, the Supreme Court in *Smith* noted that:

> The excessiveness inquiry of . . . *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is *whether the regulatory means chosen are reasonable in light of the nonpunitive objective.*

*Smith*, ___ U.S. at ___, 123 S.Ct. at 1154 (emphasis added).

¶87    Here, the Legislature chose to require sex offenders to register with their local law enforcement agency. Section 46-23-504(2), MCA (2001). As we have already stated, in mandating this requirement, the Legislature took into account several concerns with protection of the public from the recidivism of sex offenders being of "paramount concern." The Legislature also mandated that sex offenders, like Mount, provide their addresses, photographs, and fingerprints. Section 46-23-504(3), MCA (2001). As the Act states, the information provided to the public is limited to the level designation given an offender. Section 46-23-508, MCA. No additional information is given unless and until a law enforcement official deems it necessary for protection of the public. Section 46-23-508, MCA. Further, Mount may petition a court for an order relieving him of the registration requirement, although initially he is required to register for life. Section 46-23-506(1), (3),

MCA (2001).

¶88    This scheme is a reasonable effort on the part of the Legislature to tailor what information is and is not disclosed.  Accordingly, we conclude that the registration and disclosure requirements are reasonable in light of the Act's nonpunitive purpose, and we determine that the requirements are not excessive.

### SUMMARY

¶89    In summary, after analyzing both the purpose and the structure of the Act, we hold that the intent of the Act is nonpunitive.  We further hold that the effect of the Act is nonpunitive based on an analysis of the *Mendoza-Martinez* factors, namely that: (1) the Act imposes no affirmative restraint or disability on Mount; (2) the Act does not shame Mount; (3) the Act does not implicate a finding of scienter; (4) the Act can deter crime and is not retributive in effect; (5) the Act does not impose criminal sanctions on Mount for previous conduct; (6) a nonpunitive purpose--i.e., protection of the public--exists for the Act; and (7) the registration and reporting requirements are not excessive.

¶90    Accordingly, we hold that under the *Smith* intents-effects test, the Act does not violate the *ex post facto* clauses of either the United States or Montana Constitutions.

### ISSUE 2.

¶91    **Do the registration and disclosure requirements of the Act deprive offenders of any "rights" within Article II, Section 28, of the Montana Constitution, or § 46-18-801, MCA?**

¶92    We first note that this issue was not addressed in the District Court's order.  However, Mount argued this issue in the District Court and since this question is purely one of law,

23

which we review *de novo*, we will address Mount's contentions.

¶93    Mount argues that because he was discharged, his rights as a citizen, including his right to privacy, were restored. As such, Mount argues that application of the retroactive provision of the Act offends his constitutional right to privacy.

¶94    The State argues that Article II, Section 28, of the Montana Constitution, and § 46-18-801(2), MCA, afford protection to those rights commonly considered political and civil. The State also argues that Mount's conviction of sexual intercourse without consent does not fall under this category of protected rights. We agree with the State.

¶95    Article II, Section 28(2), of the Montana Constitution provides: "Full rights are restored by termination of state supervision for any offense against the state." When debating Article II, Section 28, the delegates noted that "full rights," included all civil and political rights. Montana Constitutional Convention, Verbatim Transcript, March 9, 1972, p. 1800. Indeed, Delegate James stated: "[o]nce a person who has been convicted has served his sentence and is no longer under state supervision, he should be entitled to the restoration of all civil and political rights, including the right to vote, hold office, and enter occupations which require state licensing." Montana Constitutional Convention, Verbatim Transcript, March 9, 1972, p. 1800.

¶96    We echoed this same interpretation in our holding in *State v. Gafford* (1977), 172 Mont. 380, 563 P.2d 1129, wherein we concluded:

> In our view the constitutional provision refers to those rights commonly considered political and civil rights incident to citizenship such as the right to vote, the right to hold public office, the right to serve as a juror in our courts

and the panoply of rights possessed by all citizens under the laws of the land.

*Gafford*, 172 Mont. at 389-90, 563 P.2d at 1134.

¶97     The restoration-of-rights statute, § 46-18-801(2), MCA, provides:

> [I]f a person has been deprived of a civil or constitutional right by reason of conviction for an offense and the person's sentence has expired or the person has been pardoned, the person is restored to all *civil rights* and full citizenship, the same as if the conviction had not occurred.  [Emphasis added.]

¶98     The language of Article II, Section 28, of the Montana Constitution does not afford Mount the benefit he seeks here.  The right of individual privacy under Article II, Section 10, of the Montana Constitution is a fundamental right. This requires that any legislative infringement of the right be subject to strict scrutiny analysis; be justified by a compelling state interest; and be narrowly tailored to effect only that interest.  *Gryczan v. State* (1997), 283 Mont. 433, 449, 942 P.2d 112, 122.

¶99     While Mount's right to privacy may be implicated by having to register and disclose his whereabouts, we conclude that the State had a compelling interest in enacting the Act. As discussed at length above, the Act was adopted to protect the public from the recidivism of sex offenders; to prevent victimization of vulnerable children; and to assist law enforcement in keeping track of the whereabouts of sex offenders.  Also, as discussed above, the Act is narrowly tailored in its registration and disclosure requirements to effect only those purposes in a reasonable manner.

¶100    Thus, we hold that the registration and disclosure requirements of the Act do not deprive Mount of any "rights" under Article II, Section 28, of the Montana Constitution.  We

also conclude that § 46-18-801, MCA, does not provide Mount any greater protection than does the Montana Constitution itself.

## CONCLUSION

¶101   We reverse and hold that the District Court erred in granting Mount's motion to dismiss the charge of failing to register as a sex offender.  We hold that the Act does not violate the *ex post facto* clause of either the United States or Montana Constitutions under the *Smith* intents-effects test.  We also hold that the retroactive provision of the Act does not violate Mount's rights under Article II, Section 28, of the Montana Constitution, or § 46-18-801(2) MCA.

¶102   Therefore, we reverse and remand with instructions that the trial court vacate its order of dismissal and that it reinstate the charges against Mount.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶103   I dissent.  I agree with the reasoning of Justices Stevens, Ginsberg and Breyer in their dissents in *Smith v. Doe* (2003), ___U.S.___, 123 S.Ct. 1140, 155 L.Ed.2d 164.   In summary, Justice Stevens recognized that the unique consequences imposed by the

registration requirement are punitive in that they share three characteristics, which in the aggregate are not present in any civil sanction.

> The sanctions (1) constitute a severe deprivation of the offender's liberty, (2) are imposed on everyone who is convicted of a relevant criminal offense, and (3) are imposed only on those criminals. Unlike any of the cases that the Court has cited, a criminal conviction under these statutes provides both a *sufficient* and a *necessary* condition for the sanction.

*Smith v. Doe,* 123 S.Ct. at 1157, 155 L.Ed.2d at 189 (Stevens, J., dissenting).

¶104   Justice Stevens will never be persuaded that reporting and registration obligations that are imposed on convicted sex offenders and no one else are not part of their punishment. "In my opinion, a sanction that (1) is imposed on everyone who commits a criminal offense, (2) is not imposed on anyone else, and (3) severely impairs a person's liberty is punishment." *Smith*, 123 S.Ct. at 1158, 155 L.Ed.2d at 190 (Stevens, J., dissenting).

¶105   I agree with Justice Stevens that, although registration statutes are constitutionally imposed punishment as applied to postenactment offenses, they offend the constitutional prohibition on *ex post facto* laws when applied to preenactment offenses.

/S/ W. WILLIAM LEAPHART

29