JUSTICE COTTER
dissents.
¶53 I dissent from the Court’s resolution of Issue 2. Because the State failed to prove that Young engaged in criminal conduct at the time she ostensibly withheld the child, I would reverse and remand Young’s conviction.
¶54 My first concern with our decision is that the Court’s reasoning is unsupported by the statutes upon which the Opinion is premised. The Court relies upon § 45-5-634(l)(a), MCA, the parenting interference statute, to support its decision, stating that it “prohibits the deprivation of parenting rights ‘before the entry of a court order determining parenting rights ....’ ” Opinion, ¶ 31 (quoting § 45-5-634(l)(a), MCA). If the statute ended there, I might be inclined to agree with the majority on this issue. However, I would argue the plain language of the statute requires that there be a legally-recognized parental relationship established before the act allegedly giving rise to the crime of parenting interference can be considered criminal. That portion of the statute relevant to the current appeal reads in full as follows:
(1) A person commits the offense of parenting interference if, knowing that the person has no legal right to do so, the person: (a) before the entry of a court order determining parenting rights, takes, entices, or withholds a child from the other parent when the action manifests a purpose to substantially deprive that parent of parenting rights;
Section 45-5-634(l)(a), MCA (emphasis added).
*165 ¶55 As I see it, the statute presumes the status of the two parties as parents as a “given.” The statute would apply in those cases where parents preparing to divorce are fighting over custody or visitation, and one parent takes off with the kids before any court order fixing custody or visitation can be entered-a not uncommon occurrence. The point is that in such situations, there is no question, as there is here, about parentage. While I concede that there are no cases in which this statute has been interpreted, it simply makes no legal sense to apply the statute so as to criminalize behavior in a situation where parentage has not even been established.
¶56 The Uniform Parentage Act, §§ 40-6-101 through 123, MCA, sets forth the manner in which a parent-child relationship may be established. Notably, § 40-6-102(2), MCA, states: “ ‘Parent and child relationship’ means the legal relationship existing between a child and the child’s natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations.” (Emphasis added). Section 40-6-105, MCA, then sets forth those circumstances under which a presumption of paternity arises-e.g., via marriage of the parents or the joint execution of a paternity acknowledgement form provided by DPHHS. The parties here did nothing prior to the charges being filed against Young to bring a presumption of paternity into being. It follows, therefore, that the “legal relationship” of paternity had yet to be established in any fashion when Young was charged with her crime; thus, the law had not yet conferred or imposed any “rights, privileges, duties [or] obligations” upon Haugum, or upon Young vis a vis Haugum. Quite simply, Young was not interfering with any legal relationship when she withheld her child from Haugum.
¶57 I do not agree with the Court’s conclusion that the State presented sufficient evidence to establish Haugum’s paternity under the standards set forth in the UPA. Opinion, ¶ 36. But assuming for the sake of argument that I did, my fundamental quarrel with the manner in which this case was charged and tried remains. The legal relationship necessary to support the crime was not established at the time Young ostensibly withheld the child; in fact, it was not proven until the middle of Young’s felony trial. What we have done here, however, is announce that a determination of parentage made months after the ostensibly wrongful conduct occurred may be used to retroactively criminalize conduct that was lawful at the time committed.
*166 ¶58 While no new law has criminalized Young’s conduct after the fact, our ex post facto jurisprudence is nonetheless instructive here. We have said that a law is ex post facto-and thus prohibited under the Constitution-if it punishes as a crime an act which was not unlawful when it was committed. State v. Mount, 2003 MT 275, ¶ 24, 317 Mont. 481, ¶ 24, 78 P.3d 829, ¶ 24. The same rationale ought to apply here.
¶59 Thus, the crux of the problem with this case is that the District Court both decreed paternity and convicted Young of interfering with it, all in one action. This is akin to a court resolving a dispute over property ownership and then, in the same action, convicting the non-prevailing party of theft. Simply put, due process would seem to demand that the key element of the crime-i.e., Haugum’s paternity-must have been fixed before Young’s conduct in ostensibly interfering with it could be considered criminal.
¶60 In sum, I submit that where an -unwed mother is not prepared to stipulate to paternity, there must be a prior determination of paternity before her conduct of withholding the child can be considered criminal. I would conclude that because Haugum’s parentage had not been established prior to the charges being brought against Young, Haugum had no established “legal” paternity rights with which Young could have interfered. I would therefore reverse Young’s conviction.
JUSTICE NELSON joins in the dissenting Opinion of JUSTICE COTTER.